## THE PLANTERS' AND MERCHANTS' BANK OF MOBILE *vs.* ANDREWS.

1. A privy in interest in attachment, may at all times point out defects in the proceedings, and submit a motion to quash.

2. And, *it seems*, that the practice of quashing attachments, where the remedy is unauthorised, or the requisitions of the statute not complied with, upon the mere motion of strangers to the record as *amici curiæ*, has prevailed so long, that it is not now considered irregular.

3. A defective bond is not a sufficient cause for quashing proceedings by attachment, unless plaintiff declines executing a perfect bond.

4. A possible debt, depending upon a contingency which may never happen, cannot be proceeded on by attachment: but

5. Where neither the writ, affidavit or bond, allege that defendant's estate was attached to satisfy a contingent liability—it will be presumed that the undertaking for which plaintiff seeks redress, is absolute.

6. The endorsement on an attachment is no part of the record, as the law does not require that the cause of action should be so endorsed; and will not be looked to, to ascertain the nature of the demand, forming the basis of the attachment.

7. The object of the fifth section of the constitution, article on banks, was, to restrain the legislature from granting to banking corporations, *exclusive* facilities in the collection of its debts, but does not deprive the banks, in common with other creditors, of the benefit of process by attachment.

8. Corporations allowed to sue and be sued, necessarily possess authority to perform by their agents, services incident to the commencement or prosecution of suits.

9. The term *person*, in a statute, embraces not only *natural*, but *artificial* persons, unless the language indicates that it was

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

employed in a more limited sense—therefore, a corporation is a person, within the meaning of the attachment laws.

Error to the County court of Mobile.

Attachment.

The plaintiff in error caused an attachment to be issued against the defendant, returnable to the County court of Mobile, upon the affidavit of their cashier and agent, which declared "that Solomon Andrews, of the city of Mobile, was indebted to the said Planters' and Merchants' Bank of Mobile, in the sum of two hundred and seventy thousand and eighty-five dollars, and twenty-one cents, on bills of exchange, which had not arrived at maturity, and which were not yet due, but which would fall due from the then present time, at various periods, to the twenty-sixth of September ensuing." And he further saith, "that the said Solomon Andrews absconds, so that the ordinary process of law cannot be served upon him," &c. The affidavit bore date the twenty-first day of April, eighteen hundred and thirty-seven.

The attachment was of even date with the affidavit, and was not objected to. The bond conformed to the attachment, save only in reciting the time of its return. It substituted the *first* for the *second* Monday in June, as the time when the County court of Mobile was to be holden.

On the attachment, a cause of action was endorsed, in these words:

"This action is brought to recover of the defendant, the amount of fifteen bills of exchange, drawn by him on H. M. Andrews & Co., and which are running to maturity, but which have not yet fallen due, and will be-

come due at divers times from the date hereof, to the twenty-sixth day of September, eighteen hundred and thirty-seven—viz. one bill for twelve thousand five hundred and eighty-five dollars, twenty-one cents; one for twenty-five hundred dollars; two for ten thousand dollars, each; nine bills for twenty thousand dollars, each; and three bills for twenty-five thousand dollars, each; and which bills are the property of the plaintiff, and payable to it."

From the sheriff's return, endorsed on the attachment, it appeared to have been received by him, and levied on certain property supposed to belong to defendant, and also served in the hands of several individuals, supposed to be indebted, &c. to the defendant.

In the record, we found a declaration charging the defendant, as the drawer of fifteen bills of exchange, falling due subsequent to the issuance of the attachment, and also a general *indebitatus assumpsit* count, *for money lent,* &c. *had and received,* &c.

The following judgment was rendered by the County court: "This day came the plaintiff, by its attorneys, and moved the court for judgment by default against the defendant, Solomon Andrews, for want of an appearance and plea, and also moved the court for judgment against the several garnishees, who have been summoned to answer in this cause, and who have failed to answer within the time prescribed by law, to wit: against Joseph Wood, James B. Craighead, William F. Hallet, President of the Mobile Bank, John Gayle and William J. Vandegraff, Andrew Armstrong, Cashier of the Branch of the Bank of the State of Alabama, at Mobile, William R.

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

Hallet, Jonathan Emanuel, Thomas W. McCoy, Audley H. Gazzam, Edward Henrick, Lewis Andrews, partner of the firm of Andrews & Brothers;—and also moved that the court proceed to try the right to the property levied on and claimed by Joseph Wood, and also to that levied on and claimed by William R. Hallet, as the property of Robert Wilson, Hallet and Company, respectively.

"And thereupon came James B. Craighead, esquire, Messrs. Gayle & Vandegraff, esquires, and Gordon, Chandler & Campbell, esquires, *amici curiæ*, and who moved the court to quash the attachment, and all the proceedings thereupon, had on the following grounds: First, the want of an affidavit, according to the statute. Secondly, for want of a proper bond. Thirdly, for defects in the writ.

"And the said *amici curiæ* also moved the court to set aside the proceedings for irregularity, because the declaration does not correspond with the attachment;—because the attachment was taken for a debt not due; because, upon the attachment and declaration, it discloses a case upon which no attachment ought to have issued; and because the whole proceeding is uncertain, variant and illegal: all which being seen and heard by the court, and due deliberation being thereupon had, it seems to the court, that the said attachment," &c. "should be quashed, and the same are by the court quashed and dismissed."

The court refused the motion for judgment, &c. as made by the plaintiff, and rendered a judgment, against the plaintiff for cost.

From a bill of exceptions, sealed by the judge of the

County court, it appeared that the plaintiff tendered a new bond immediately after the decision upon the motion to quash was announced, conforming to the affidavit and writ of attachment, which the court refused to accept, though entirely satisfied of the solvency of the surety who executed it.

Under the state of facts above disclosed, this case was brought here by appeal.

The assignments of error now made are as follows:

1. The court erred in quashing the said attachment.

2. The court erred, as set forth in the bill of exceptions taken by the appellant below.

3. The court erred in rendering judgment below against the appellant.

4. The court erred in refusing to render judgment for the plaintiff below, as moved for by it.

5. The court erred in refusing to allow the motions made by the appellant.

6. The court erred in sustaining the motions made by the *amici curiæ* in the court below.

7. The court erred in discharging the garnishees below.

*Stewart*, for 'the plaintiff in error.
*Campbell*, contra.

*Stewart*, for plaintiff in error.—The objection made is, that the attachment will not lie, because the liability is not a contingent one, and not due, and may never become a debt due; and the case of Benson vs. Campbell is cited to sustain that position.

The Planters' & Merchants' Bank of Mobile *vs*. Andrews.

That the debt is not yet due, is not the objection—
(See Aikin's Dig, p. 37.)   An attachment will lie for a
debt not yet due, and the attachment shall be a lien un-
til the debt becomes due.   The law does not, by the at-
tachment, authorise a judgment on such a demand before
due; it merely authorises a party to secure and *obtain
security* for his debt, until it becomes due; and whether
there shall be a recovery or not, must depend upon whe-
ther the liability is completed afterwards or not—it is
very different from the case where a judgment is allow-
ed at once abating interest.   Such is not the remedy giv-
en by our statute.

A mere contingency of itself, is not a sufficient objec-
tion—for all obligations payable at a future day, may be
said to be contingent.   If a note, payment may be
made—a set off may be set up—the consideration may
fail—the note may be altered by the holder, and become
void.   If the note be a joint and several one, it may be
paid by another party—taken up by an endorser, &c.

All obligations are at least contingent as to the ques-
tion of payment, for the obligation may be paid at ma-
turity; and if so, there never can be a judgment.   Then,
in all cases of this nature, whether there shall ever be a
judgment or not, will depend upon the occurrences to
happen after action brought, and there can exist no pos-
sible case where this contingency does not exist, and
where the right of action exists at the time of suit,
brought, and where we can say there will certainly be
a judgment eventually on the demand; whether there
shall be a judgment or not, depends on a contingency.
It is, therefore, not the contingency merely, which is to

8 P.            52

govern us—but either we must make a distinction between different degrees of contingency, or seek a new principle of distinction.

These reflections and others, lead me to the conclusion, that whether the debt be merely contingent or not, would make no difference under this statute. But there is a decision of the court, and if the court are satisfied with the propriety of the decision, then we must examine the extent to which the principle decided, is to be carried.

If the objection is to rest upon the question of contingency, (and all cases must necessarily be more or less contingent,) then it is the degree and extent of the contingency which we must investigate. It is evident the rule must have a limit, and there must be some stopping place; the line of demarcation between cases where the attachment will lie, and where it will not, must be drawn. How far will the court extend it?

The case of Benson vs. Campbell, was a most presumptuous attempt to attach, without any right or title whatever, and that case, so far as the facts of it are concerned, proves nothing. In that case, Campbell was not the holder of the bill. He had endorsed a bill as a surety, and had paid nothing, but became alarmed, lest he should afterwards become liable, and be compelled to pay, in which case he would have a claim against his principal; but he parted with no consideration—paid no money—and had no right to recover against any body; but the holder of the bill was the party entitled to the money. The case there was, that he might first become, by possibility, liable himself; then he might pay, and then he

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

would have a claim against Benson.    This was a pre-
posterous claim.    These facts appeared in the *writ of
attachment*.    It recited no indebtedness whatever, present
or future.    There was no declaration.    The court said
they would remand, if the fault was in the declaration;
but "no declaration could be framed on that writ,"—
therefore, they would reverse *in toto*.    There was no affi-
davit of indebtedness.    The objection there was *radical*
—not merely technical—it was absolute, and advantage
of it taken by the defendant himself.    No case could be
framed on it which would authorise a recovery.    From
the facts shewn, it was apparent that it was not a case
where there might be, or might not be, a right to recover,
but it was a case where it was conclusively shewn that
there could be no right.

Our case is different.    Suppose that on our writ, we
should have framed a declaration, shewing an absolute
liability at all events—then there could have been no
difficulty.    In the affidavit in our case, we shew on oath
an *absolute* indebtedness.    The endorsement on the writ,
can never be taken to defeat the writ.    It cannot be re-
sorted to for that purpose.    Suppose the declaration was
variant from the endorsement on the writ—the variance
could only have been taken advantage of by plea in
abatement—not by demurrer; and if he failed to do so,
it was not error.    The proceedings in attachment say
the statute must be liberally construed.

Ours is a case where it is not conclusively shewn from
the declaration, much less the writ, (and it is the writ
which is quashed—the quashing of the declaration, or
setting it aside, or refusing to grant our motion for judg-

ment by default, could not have injured us, for we would have amended it, and filed a new one, shewing absolute liability, which could be done, without any inconsistency with the writ, affidavit or endorsement,) whether the debt is absolute or not. It may for aught the court knows, from the writ, affidavit and endorsement, be a case of absolute liability on the part of S. Andrews. The truth of the case—the very facts which can be stated—will afford the best argument possible to prove this. The facts are these: S. Andrews and H. M. Andrews were partners. The firm of H. M. Andrews & Co. consisted of H. M. & S. Andrews; and H. M. Andrews was a partner with S. Andrews in Mobile, under the name of S. Andrews. The bills were drawn on the New York house, without funds, for the accommodation of the house of S. Andrews in Mobile. S. Andrews got the money, and it was an expedient used to raise money by him; so that in fact he was drawer and acceptor both. No demand was necessary—no notice was necessary to him, —and he, as well as H. M. Andrews, were jointly and severally liable for the whole debt, as drawers, and also as acceptors. (They may, as such, be jointly and separately sued by our statutes.) Suppose these facts had been disclosed by the declaration, the objection would have vanished. It would be a case of positive and absolute, not contingent liability in S. Andrews—for he draws on himself. Then if this be true, and such a declaration could have been filed, the writ could not be quashed, for its sufficiency cannot depend on the goodness or defectiveness of the declaration. The court might have refused to grant us the judgment by default, we

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

asked, but should not quash the writ. We would have filed a new declaration.

But I now propose to shew more than this; I propose to shew that the declaration was a good one, and one which would admit of being proved and satisfied by proof of an absolute liability. It is true, that the counts are in the usual form, averring notice, demand, protest, &c. But it does not follow, that we must prove demand, protest and notice, to prove and satisfy the averments of it. Suppose we were to go to trial under this declaration, and then prove the very facts which I have before stated—the court would have told the jury, that if they believed those facts, they must find for the plaintiff; that they were tantamount, and equivalent to demand, notice and protest; that the liability was absolute, because the law would consider such drawing as a fraud on the bank; and that as to the form of the declaration, any thing which would amount to a waiver of demand, notice and protest, or any thing which would shew them to be unnecessary, was sufficient to satisfy the averments of those things, and would have cited law in support of this proposition. And this court would have affirmed that judgment.

This view of the case turns upon the question, whether or not this declaration, in the shape in which it is, would admit of proof of an absolute indebtedness.— There are a great variety of cases, which might be presented, which would satisfy the averments of the declaration as laid, and still be cases of absolute liability. Suppose we were to produce on the trial, an acknowledgment in writing, signed by S. Andrews, dated after

the drawing of the bills, and before suit brought, as follows: "I agree to waive the necessity of protest and notice, admit that the bills were drawn for my accommodation, and that I received the consideration, and am primarily liable, having no funds in the hands of H. M. Andrews to pay them,"—or any other thing of the same import; or suppose it was shewn that the firm of H. M. Andrews & Co. consisted solely of "Sol. Andrews," himself alone, doing business in New York, under the name and style of H. M. Andrews and Co.—or any other state of facts whatever, of which a thousand might be imagined, which would put those bills in the class of bills in which the drawer was in fact the party primarily liable, and that if any other party paid the bill, he would have an action thereon against him (the drawer) for the amount. Then on the trial, a recovery could be had on those counts, and no special form of declaration was necessary, the general form being sufficient to admit such proof.

It therefore appears, that the case might in fact be a case of absolute liability, or might not, and whether it was or was not, was to appear from the proof. But even if it appeared from the declaration, the declaration can never determine whether a writ, when issued, was subject to be quashed or not quashed. The writ was good or bad when issued, and no subsequent part of the pleading can vary its original merits.

Why shall we say it was bad from its own face? It recites that "Sol. Andrews was indebted in the sum of $—, to become due hereafter, not contingently, but absolutely." Very different from the case of Benson *vs.* Camp-

The Planters' & Merchants' Bank of Mobile *vs*. Andrews.

bell: the affidavit is to the same effect, of an absolute indebtedness—the endorsement is not inconsistent with this state of the case, and does not destroy the averments of absolute indebtedness contained in the affidavit and writ. The bond would secure S. Andrews against all injuries which might arise, if the claim was an improper one, and the debt not really an absolute one. He might plead in abatement, that it was a contingent liability, if such was the fact, and abate the writ; but he could not file such plea, because it required to be sworn to, (and he could not deny the fact,) and he would have to give us a better writ, if the liability was absolute. Now, it does not appear that he denied in any way the absoluteness of the debt; but strangers, who do not know whether it is absolute or not, do interfere without it appearing to be, and without pretending that they represent him, and persons who are not liable to him, because of the very fact that they do not pretend to represent him, but they represent their own interest. They injure both plaintiff and defendant, and without authority. I do not deny, that if they had pretended to represent Andrews, that their authority to do so could be disputed, because they are counsellors; but they do not say that they have his warrant, or that they wish to represent his interests. They do not say whose interests they desire to protect, and the presumption is against them.

Andrews himself, was in default for not appearing—the time had passed when the bills had fallen due, and it was by the declaration shewn, that the liability had become, under any view of it, and was, absolute, at the time the writ was quashed. The general statutes of

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

Jeofails would prevent our defeat in this case, because the demand must be tried according to its merits, and justice. But the attachment law is still more liberal by its express enactments. If there be no bond and affidavit, it must be abated by plea. There is no part of the statute which authorises the motion to quash, either by the defendant or any one else. The law first required the defendant to replevy, before he was admitted to plead, (Aik. Dig. p. 41, s. 13;) but it was amended so as to allow him to appear and plead without replevying.

Section seventeen provides, that the statute shall not be rigidly construed; even the original papers may be amended. The right to amend is absolute, unless the error was a fraudulent one; nothing else can prevent the amendment.

Section thirty-nine provides, that no attachment shall be *abated* for want of form, much less quashed. The motion to quash must certainly be confined, if it can be made at all, to what appears on the *face of the writ*—for the statute has provided that want of bond and affidavit shall be by plea in abatement—and this court has determined that a defective writ, in the case where the return day is wrong, is not void, but voidable, and may be abated—not quashed.

I will conclude, by adverting to the wide field opened in these cases, if this objection can prevail. Where shall it stop? What the line of demarcation between cases to be considered contingent, and those not? The case of Benson is one where not only the *liability* is contingent, but where the plaintiff's *grievance* is contingent. Not so in this case: Andrews has received the consideration,

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

and we have parted with it. Certainly, any case where the liability is primary, is not contingent. Apply this rule to cases of joint makers—of endorsers—against joint and several makers—against sureties, *where the plaintiff is the holder*—cases where endorsers are liable, only where the maker is prosecuted to insolvency—but where they cannot be found, (case under our statute where notes are not payable in bank,) and all cases where others are liable as well as the defendant, and where a party has a right of action against several at the same time for the same cause of action, as bills endorsed, and notes endorsed, and what will be the effect of this principle? It will prove very injurious to justice, and to the equal rights of all creditors;—they should all be upon the same footing. One creditor may acquire a lien on all a man's property, when the contract is *contingent* in *substance*, though not in *form*, to the exclusion of another, whose contract is absolute in *form*, but contingent in *reality*—which result was never intended by the statute.

*Campbell*, for the defendant in error.—The counsel for the plaintiff insists, that all obligations are contingent as to the question of payment, and because the statute permits an attachment to issue upon an obligation to which there is incident such a contingency, an attachment may issue upon all contingent liabilities.

The contingency in the question of payment, arises out of some conduct of the debtor. If he honestly fulfils the contract, payment will be made—but as the conduct he may maintain, renders the fact doubtful, (in certain

8 P. 53

specified cases,) security is afforded to the creditor, by allowing in advance the remedy by attachment.

The contingency in the " question of payment," arises out of none of the stipulations of the contract. Both parties contemplate certainty in the payment, and one party pledges fidelity in the performance of that act.

The contingency that we say renders this remedy improper, is, that the liability of the defendant may never exist. He may never owe the plaintiff one cent. The parties do not contemplate that he will owe the plaintiff. Whether he will owe the plaintiff, depends upon circumstances, still to intervene. Until they occur, there is no claim that the plaintiff is justly subject to.

The case of Benson vs. Campbell, (6 Porter's R. 445,) is express to this point. A party had become liable, as an accommodation endorser, on a bill of exchange. His liability was not certain—nor had he done any act to insure a claim against the defendant. But he was in a situation in which a liability might arise to pay the debt, and the defendant was proceeding in such a manner as rendered it probable that he would be compelled to do so.

But the court determined that the process of attachment rests upon no *quia timit* principle. There must be a direct contract, either matured and violated; or one the violation of which was rendered probable, to authorise its adoption. There must be an indebtedness at the time.

The same contingencies appear in this contract. A drawer of a bill is supposed to assign effects at the time for the payment of the bill. Whether he shall ever be called to do more than this, is uncertain. Whether he

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

shall become liable to do more, is dependent upon the acts of others.    These acts must be performed before his liability arises.    The contingency of a further liability in the drawer, is as remote as that in the case of Benson vs. Campbell.

The facts stated by counsel, should have appeared in the affidavit, to justify the argument upon it.    It is true, that a drawer of a bill may, at the time it was negotiated, give collateral instruments, that will render it a direct liability—or there may be circumstances that will convert a collateral into a direct liability.    Those circumstances ought to be shown.

The old statute required that the affidavit should specify the nature of the debt—the account between the parties.    If our present statute does not make the requisition, it has not changed the principle upon which the employment of the remedy depends—(3 Stewart & Porter, 67.)

COLLIER, C. J.—It has long been the most general practice in this State, to move to quash attachments in the manner in which the motion was submitted in the case at bar:—A practice suggested *ex majore cautela,* and originating doubtless, from an apprehension that an appearance as counsel, operates a waiver of all defects apparent upon the face of the proceedings—an idea, certainly without any foundation, either in law or reason.— And motions thus submitted have been entertained by our courts, under the impression that it was competent for them, *mero motu,* to repudiate a case commenced by attachment where the remedy was unauthorised, or the re-

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

quisites of the statute were not complied with. In a case rendering it necessary, it might indeed be a matter of serious inquiry, whether a practice that has so long prevailed, should be held irregular, however much we might feel inclined to disregard it, were it *res integra.*

But the present case does not require us to consider the general powers of an *amicus curiæ,* for the record clearly discovers that several of the gentlemen who presented themselves before the County court in that character, had such an interest in the controversy, as authorised them to submit a motion to quash the attachment, issued at the suit of the plaintiff. They had been summoned as garnishees, to answer as to their indebtedness to the defendant, and at the time they made their motion, the motion of the plaintiff's attorney for a judgment by default, was pending before the court. So we think it clear, that at least several of the gentlemen who advocated the motion to quash, cannot be regarded as mere volunteers without an interest—and either one of them being authorised as a privy in interest, to point out defects in the proceedings, it is immaterial what is the predicament of the others.

The true inquiry, then, is, did the County court err in its judgment? The bond on which the attachment issued, does not correspond with the attachment. It recites the time when the court is to be holden, to be the *first Monday in June,* without designating it as *the next County court,* &c. If the condition of the bond contained these latter words, we will not say that they would not authorise the rejection of the former, viz. " *the first Monday in June next,*" and the bond then be a sufficient com-

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

pliance with the law; although this court, under its first organization, decided that a *capias ad satisfaciendum*, "returnable to the next term of the court, to be holden," *&c.* at a time not appointed by law, was absolutely void —(Brown vs. Simpson, 3 Stew. R. 331.)

In Lyon vs. Malone, (4 Porter's R. 414,) this court determined that a writ of error not showing the term of the Supreme court to which it was returnable, might be amended by its teste, or by the bond or citation;—that the time of its issuance being ascertained from either of these sources, the statute upon the subject ascertains the return to be the next succeeding term of the court. In the case before us, the statute is not so explicit on this point, but the court to which the proceedings are returnable, and the time when they are to be returned, is prescribed by the officer issuing the attachment, and must appear on the face of the proceedings—(Aik. Dig. p. 38, sec. 6.)

In Lowry vs. Stow, (7 Porter, 483,) the bond described the attachment as being returnable near two years previous to its issuance, and was considered by this court as defective.

The bond, then, was defective; yet the court should not, for that cause, have quashed the proceedings. This court has heretofore decided, under the influence of the seventeenth section, (Aik. Dig. p. 42,) of the attachment law, as revised in eighteen hundred and thirty-three, that a defective bond was not a sufficient cause for quashing the proceedings by attachment, unless the plaintiff declined executing a perfect bond—(Lowry vs. Stow, 7 Porter, 483; see also Pearsall *&* Stanton vs. Mid-

dlebrook, 2 Stew. & Por. R. 406; and Johnson vs. Hale, 3 Stew. & Por. R. 331.)

It is further insisted for the defendant, that the record does not disclose such a liability as will form the basis of an attachment—that the defendant may probably never become chargeable to the plaintiff—a fact which cannot be known, until after the protest of his bills for non-acceptance or non-payment; so that at most, his undertaking with the plaintiff is *contingent.*

In Benson vs. Campbell, (6 Porter's R. 455,) it was held that "under our attachment laws, a plaintiff must show that the defendant is indebted to him in a *sum of money past due,* or else in a *sum of money to be paid at a future day."* That " a possibility depending upon a contingency which may never happen—the dishonor of a draft, for the payment of which the defendant was a surety," could not be proceeded on by attachment. But neither the writ, affidavit or bond, inform us that the defendant's estate was attached to satisfy a contingent liability, and for any thing shown by either of these, the undertaking for which the plaintiff is seeking redress, is absolute.

The endorsement on the attachment, it is true, discloses the character of the plaintiff's demand—yet this cannot be regarded a part of the record, inasmuch as the law does not require the cause of action to be endorsed on the attachment. This point was brought directly to the view of this court, in Lowry vs. Stow, (7 Porter's R. 483,) and it is there shown that the act of eighteen hundred and seven, which makes it " the duty of the clerk, or plaintiff's attorney, to endorse on the back of the writ

The Planters' & Merchants' Bank of Mobile *vs*. Andrews.

the cause of the action, the nature of the specialty, or the grounds on which the action is founded," as indicated both by its terms and its title, "applies to the initiatory process in a cause issuing from courts in which clerks are necessary officers." This decision still meets our entire approbation—and the endorsement not constituting a part of the record, affords no warrant for the judgment of the County court.

The only remaining question raised is, whether a corporation can, in any case, recover its debts by attachment. Our statute upon the subject enacts, that "original attachments, foreign and domestic, may be issued by any judge of the Circuit or County courts, or any justice of the peace." And further, that "every judge or justice, before issuing an attachment, shall require the party applying for the same, his agent, attorney or factor, to make affidavit in writing, that the person against whom the attachment is prayed, absconds," &c. "and shall further require the person applying for the attachment, his agent, attorney or factor, to swear to the amount of the sum due the plaintiff," &c.: "and shall further require the plaintiff, his agent, attorney or factor, to give bond payable to the defendant," &c. The same statute also provides, that "a writ of attachment may in all cases issue against the property of a debtor legally subject to the process of attachment, although the debt or demand of the plaintiff be not due," &c.—(Aik. Dig. p. 37, 39, s. 2, 3, 7.)

The right of a corporation to avail itself of the remedy by attachment, arose in The Trenton Banking Company vs. Haverstick, (6 Hals. R. 171.) The objection, there, was rested upon the ground that the law of New Jersey

required the oath, in order to obtain the attachment to be made by the *applicant* for the writ, and hence it was argued, that inasmuch as an *artificial person* could not make an *affidavit*, the bank could not entitle itself to that remedy. But the court remarked, that " a construction of the act respecting attachments would be unsound and indefensible, and entirely inconsistent with the intention of the legislature, which should preclude a corporation from suing out a writ of attachment ; as must be the result, if the act be so construed as to require the *affidavit* from the corporation itself, or to deny the use of the writ without such *affidavit*. The law which gives existence to the corporation,—which allows it to sue and be sued, necessarily confers the authority to perform by its agents, by whom alone it can act, incidental services like that in question."

Again, say the court : " In general, there is a manifest propriety in the making of such *affidavits* by the cashier, or president, or one of the acting clerks of the bank, because acquainted with the duties of their stations, with its pecuniary affairs, and of course with its creditors and debtors. But they are, and act in so doing, as the agents of the corporation."

The court consider the general right to sue and be sued, and so construe the statute of New Jersey, as to make the term "*applicant*," as far as corporations are concerned, not to inhibit the instrumentality of agents or attorneys.

Our statute expressly authorises the *affidavit* and bond to be made and executed by an agent, attorney, &c. ; and the right to proceed by attachment, results from the

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

incidental power and liability of suing and being sued, which pertains to all corporations, even at common law; unless taken away by positive enactment. The counsel for the defendant in error, conceding the justness of this reasoning and conclusion, argues that it has no application to banking corporations in this State—that the constitution, by declaring that "the remedy for collecting debts shall be reciprocal, for and against the bank"— (Section five, article on banks, of the constitution of Alabama,)—denies to the plaintiff the remedy by attachment. That inasmuch as the plaintiff cannot be subject to such a proceeding, to allow it to avail itself of it, would be a violation of the reciprocity intended to be secured by the constitution. This argument we think rather more specious than solid. With a view to the proper understanding of the constitutional provision, it may be well to consider the circumstances under which it was adopted.

In the charters of the Huntsville, St. Stephens and Mobile banks, (the only banks established previous to the organization of the State government,) these corporations were invested with power to proceed summarily against their debtors, and recover a judgment at the first term of the court, while a creditor of the banks was required to pursue the ordinary forms to collect his debt. To do away with such inequality, by subjecting the banks, as far as practicable, to the remedies they might employ, the provision we have cited, was made a part of the constitution. Its purpose was clearly to restrain the *legislature* from granting to banking corporations *exclusive facilities* in the collection of their debts. The attachment

8 P.                     54

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

laws are general in their terms—offering to all alike, the benefit of their provisions, and operating upon all who place themselves in the predicament in which they *contemplate the debtor.* That the plaintiff, as an artificial person, never can *abscond,* is clear, and cannot, for *that cause,* be subject to an attachment; yet this does not depend upon any negative terms used in the statute, but results from the nature of the plaintiff's character. The proceeding in the present case, is intended as a substitute for the personal service of process; if the defendant appears and gives bail to the action, the writ of attachment becomes *functus officio,* and the case progresses as if it had been commenced in the usual manner. Now, as the plaintiff could not *abscond,* but must abide the ordinary procedure of the law, it is difficult to discover any foundation in justice for the defendant's objection. In fact, if an attachment was denied to the plaintiff, there would be plausibility in an argument, that by its denial, the plaintiff did not occupy ground in regard to the collection of its debts, as favorable as an individual creditor—while it was always in a condition to be sued, its debtors, by absconding, might escape its suits. We are clear in the opinion, that the constitution does not lend any aid to the defendant.

The argument, that *natural persons* are alone entitled or liable to the process of attachment, cannot be maintained. It is true, that the statute would seem to refer to such persons only, yet it is well settled, that the term *"person,"* in a statute, embraces not only *natural,* but *artificial persons;* unless its language indicates that it was employed in a more limited sense, or the subject matter .

The Planters' & Merchants' Bank of Mobile *vs.* Andrews.

of the act leads to a different conclusion. So far as the case at bar is concerned, we can discover no reason for restricting the meaning of the legislature.

In the Bank of the United States vs. the Bank of North Carolina, (6 Pet. Rep. 29,) it was decided, that a corporation was a *person*, when placed in circumstances identical with those of a natural person—(s. p. The Farmers' Bank of Delaware vs. the Elkton Bank of Maryland, 12 Pet. Rep. 134, 135 ; and U. S. vs. Amedy, 11 Wheat. R. 392.)

It cannot have been supposed by the County court, that the defendant would have been without remedy, if the attachment was wrongfully or vexatiously sued out. If such an idea influenced its decision, it was clearly erroneous. The obligors in the bond would be bound to respond in damages, if the defendant was improperly aggrieved.

In examining the questions presented for our decision, we have not felt authorised to look into the declaration. Upon the motion to quash, it did not regularly come before the court. If it be variant from the writ, or defective in itself, the defendant's remedy is entirely different from that he has adopted.

In our opinion, the judgment must be reversed, and the case remanded.

GOLDTHWAITE, J., not sitting.