# CITY OF SELMA *vs.* MULLEN.

[ASSUMPSIT AGAINST MUNICIPAL CORPORATION FOR SERVICES RENDERED, &C.,
UNDER PAROL CONTRACT.]

1. *Corporation; when may contract by parol.*—A corporation may make a legal contract by parol, unless the statute of incorporation or some by-law of the corporate body forbids it.

2. *Same; when assumpsit lies against.*—The corporation of a town or city is not exempt from this rule. And when this is the case, an action of assumpsit lies against such corporation upon an express or an implied promise.

3. *Same; what is competent evidence to show employment by.*—M., the city physician of an incorporated town, duly elected to his office by the corporate authorities, wishing to be paid *extra* compensation for attention to *small-pox cases*, went before the town council and requested to know what extra compensation would be allowed him, and was told in reply to his request, by one of the councilmen in hearing of all the others of the council then present in the council-room and engaged in their regular business, and without any objection from any councilman present, "*Doctor, go on with your small-pox cases, and we will do what is just and right; can't you take our faces for that?*" *Held*,—that this is competent evidence for M. in a suit against the corporation for extra compensation for services in such small-pox cases, in connection with other proof, that such services were performed and accepted by the corporation, when the action is "on account or verbal contract."

4. *Same; what such declaration estops city from doing.*—After such a declaration, the corporation is bound to pay what is just and right for the extra services thus rendered. And the corporation can not, by resolution of the council or by-law, fix the amount of extra compensation without the assent and concurrence of M., the physician.

5. *Same; receipts may be explained.*—If the council of the town or city fix this extra compensation at a certain sum, and this sum is paid to M., the receipts given for the sums thus paid do not estop him from showing, in a suit on his account for extra services, that he did not consent to receive the sums thus paid in full satisfaction of his claim.

6. *Municipal corporations; effect of civil war on franchises and powers of.* The late revolution, in this State, did not suspend the right to the exercise of the franchises of an incorporated town in this State, within the lines of the insurrectionary forces. Such incorporated town or city might still make legal contracts, upon which it would be bound, not-withstanding it was under the control of the insurgent power.

7. *Same; what contract approved by law of land and public policy.*—A contract by a city corporation with a physician, entered into during the late rebellion, to attend to indigent persons sick with the small-pox,

whether belligerents or non-combatants, is not such a contract as is forbidden by the law of the land or the public policy. Attention to the sick is a duty of humanity, that no law of this State condemns. [SAFFOLD, J., *not sitting*.]

APPEAL from Circuit Court of Shelby.
Tried before Hon. CHARLES PELHAM.

The facts are sufficiently stated in the opinion.

FELLOWS & JOHN, for appellant.
MORGAN & LAPSLEY, and HEFLIN & McCRAW, *contra*.

PETERS, J.—This is an action "on account or verbal contract," for services rendered by appellee for the sick in said city of Selma, during the years 1865 and 1866. The suit was originally brought in the city court of Selma, but afterwards, by consent of parties, the trial of the case was changed to the circuit court of Shelby. The complaint contains two counts. They are as follows:

1. "The plaintiff claims of the defendant the sum of forty-six hundred dollars for work and labor done by the plaintiff for the defendant, at the request of said defendant, in the years 1864, 1865, and 1866."

2. "And plaintiff claims of the defendant the further sum of ten thousand dollars for this, that on, to-wit, the 9th day of May, 1865, at the special instance and request of the mayor and council of the city of Selma, for and on behalf of the said defendant, the plaintiff, who was then and there the city physician of Selma, was employed by said mayor and council to bestow his professional service as a physician and surgeon upon the poor of the city, who were afflicted with a loathsome and contagious disease known as the small-pox, and the said mayor and city council promised and agreed with the said plaintiff to pay him what his services were worth, and plaintiff says that he did perform service in accordance with said employment, and bestowed his professional labors as a physician and surgeon upon a large number of the poor citizens of said city, all at the request of the defendant, to-wit, eight hundred

of said citizens, who were sick with small-pox, and plaintiff says his services were, worth ten thousand dollars, which sum is now due, with interest thereon."

The record does not disclose upon what plea the parties went to trial in the court below, but there was a verdict for the plaintiff, Mullen, appellee in this court, for nineteen hundred and fifty-eight dollars and ninety-nine cents, (1,958.99,) and judgment was given accordingly. From this judgment the city of Selma appeals to this court.

There were numerous exceptions taken by the defendant in the court below, the appellant here, to the proceedings in that court, but they all, more or less, turn upon the same point; that is, the character of the contract between the plaintiff and the defendant upon which the action is founded.

The testimony shows that Selma is an incorporated city in this State, with power to make by-laws and conduct the affairs of an incorporated city, and that Dr. Mullen, the appellee in this court, was duly elected by the city authorities city physician for the municipal year, beginning on the first of May, 1865, and the year 1866. There was also proof tending to show that he was employed by the corporate authorities, at "extra compensation," to attend to certain "small-pox cases," during his terms of office, in the years above named, but it did not appear that there was any written or verbal order or resolution of the corporate authorities making this employment; but one of the councilmen, in the presence of the city council, convened for official business in the council chamber, told Dr. Mullen, in reply to his request to have his extra compensation fixed for services in "small-pox cases," "Go on, doctor, and attend to your small-pox cases, and we will do what is just and right; can't you take our faces for that?" This was said in the presence of the council, and there was no objection. Dr. Mullen then left, and "the council went on with its regular business." There was proof that the services were performed under this direction thus given, and what such services were worth; and, also, that the services so rendered were accepted by the corporation, and

a resolution passed to pay a certain sum per month for the same by the city. Under this resolution some payments were made and received, and receipts given for the same by Dr. Mullen. But the evidence was conflicting, whether the payments thus made were received by Dr. Mullen in full compensation for his services or not. There were numerous objections by the defendant to the evidence of the plaintiff, offered on the trial below. But they mostly turn upon the assumption that the evidence of employment, above detailed, was incompetent to show a liability on the part of the corporation, under the counts of the complaint above quoted. There were, also, several charges given by the court at the request of the plaintiff, which were objected to, upon the same grounds, by the defendant, and some asked in opposition, by the defendant, which were refused; also, some charges upon the illegality of the city government during the late rebellion.

A corporation is an artificial person—a creature of the sovereign legislative power. And there is no .doubt such body corporate, within the compass of its powers, may enter into contracts, just as a natural person may make like contracts.—1 Black. Com. p. 467; 2 Kent's Com. 267, 270; Ang. & A. Corp. p. 1, §§ 1, 2, 6; *Dartmouth College v. Woodward*, 4 Wheat. 636, 518; *Bk. of Augusta v. Earle*, 13 Pet. 519; *Providence Bank v. Billings*, 4 Pet. 514; *Planters Bk. v. Andrews*, 8 Porter, 404; 1 Kyd, Corg. 13, *et seq.*; 2 Bac. Abr. Bouv. p. 437. It is quite clear that a corporation must act within the limits of its powers. The charter of its creation is the measure and warrant of its authority, though it is not confined alone to the express grant; but it may also extend to such as are incidental to these.—*Head & Amory v. The Providence Ins. Co.*, 2 Cr. 127; *Goszler v. Corporation of Georgetown*, 6 Wheat. 593, 597, 598; *Charles River Bridge v. Warrior Bridge*, 11 Pet. 420, 546; *People ex rel. Attorney-General v. Utica Ins. Co.*, 15 John. 358; 2 Bac. Abr. p. 445, D. *et seq.* Assumpsit lies against a corporation upon an express or implied promise.—*Bank of Columbus v. Patterson*, 7 Cr. 299; *Bank U. S. v. Dandridge*, 12 Wheat. 64; *Danforth v. Schorarie & Duanesburgh Turn-*

City of Selma v. Mullen.

*pike Road*, 12 John. 227; *Montgomery County v. Barber*, 45 Ala. Rep. 237. There is no general law in this State which confines a town or city corporation to any particular mode of making contracts, or directs by whom such contracts shall be made. And unless the statute of incorporation prescribes the mode, and the persons by whom the contract is to be made, any legal mode is sufficient. A town incorporated under the Code must act through its intendant and councilmen, but in what manner this action is to be conducted is to be directed by its by-laws.—Rev. Code, §§ 1489, 1502. And a town incorporated by act of the general assembly, is a municipal and public corporation of which the court will take notice, and also of the law creating its franchises, (1 Greenl. Ev. ch. 2, § 6,) but not of its by-laws or ordinances. The learned counsel for the appellant has not called the attention of the court to any section of the statute incorporating the town of Selma which directs how the corporation should employ its city physician, nor has the court been able to discover that there is any special direction upon this subject. Nor has it been shown that there is any by-law of the city on the manner of employing the city physician. But it seems the usage was to elect him by the council, or by the mayor and intendant and council. Nor is it shown what duties were required of him. But it seems, that whilst the appellee acted as such city physician for the city of Selma, it was the custom of the corporation to pay for extra services for attending on "small-pox cases."

Dr. Mullen, the appellee, had been so paid for attention to "small-pox cases" on the request of the mayor. Dr. Morgan had also been liberally paid on like request. This seems to have been done in both these instances without any written order or resolution of the city council. But it also seems that Dr. Mullen felt himself entitled to some extra compensation for services for attention to "small-pox cases" during his term of office, and went before the council, when they had met for the transaction of the business of the corporation, and urged his title to such compensation. One of the members of the council said,

in presence of the others, who were then present engaged in their corporate capacity, in reply to the request of Dr. Mullen to have his extra compensation fixed, " Go on, Dr., with your small-pox cases, and we will do what is just and right ; can't you take our faces for that ?" No other councilman said anything. The council took no action, other than this declaration, on the matter at the time. Dr. Mullen left the council chamber, " and the council went on with their regular business." (The mayor's testimony.) Under this direction so given, Dr. Mullen attended to some eight hundred small-pox cases. And the proof showed that such cases were not too high at twenty-five dollars each. I think this was clearly an employment, a contract to pay what the services were worth. It was doubtless loosely made ; but this is not a proper ground of complaint by the city authorities, because it was in their power to have made it differently. If the council sat silent and permitted one of their number to speak for them, and acquiesced in what was said, and allowed the services to be performed upon it, it must be taken as their mode of making the contract of employment, unless it is shown that there was some statute or by-law of the corporation, known to the party employed, which forbade it. The usage of the corporation may become the law of the corporation in such a matter, if there is no other law that forbids it. 4 Co. R. 78. After the contract of employment to attend to small-pox cases for extra compensation was entered into, no subsequent by-law could alter it or impair it, without the consent of both the parties to it. Such a by-law would be void for unconstitutionality. The power to make by-laws is derived from " the State," and the State could not confer a power it did not itself possess.—Const. U. S. Art. I, § 10, cl. 1 ; Pasch. Const. p. 153, 154.

What the services performed were worth, or whether they had been performed, or whether they had been paid for or otherwise adjusted, were questions left to the jury, and their verdict is final, and not subject to review in this court upon appeal.

In this view of the law, the charges given by the court,

and the refusal to charge as requested by the defendant, were correct.

The charges given at plaintiff's request express in substance the view of the law as set forth in the charge given by the court. It is unnecessary to notice these numerous charges refused. They were all based substantially upon the views of the law as set forth below, in the charge asked and refused by the court.

The court charged the jury, in substance, that " if they believed the city authorities employed the plaintiff to attend to their small-pox cases, and that he did attend to the small-pox cases, then the city of Selma is in law bound to pay him whatever the testimony satisfies the jury that such services were reasonably worth, unless there was an express contract, in which latter event that must control plaintiff's compensation." Defendant excepted to this charge.

Among other charges asked by defendant, and refused, was the following :

" If the jury believe from the testimony that Dr. Mullen was the city physician of the city of Selma in the years 1865 and 1866, he was bound by the duties of his office to attend to small-pox cases, and that by reason of his accepting said office he was bound to attend such small-pox cases at such extra compensation as the city authorities deemed proper ; and if the jury believe from the testimony that after he had so accepted the position of city physician, he applied to the city council or authorities to fix the amount of extra compensation, and the council, or some member thereof in the hearing of the others, requested the plaintiff to go on and attend to the small-pox cases, and the city authorities would compensate him liberally, that this did not constitute a contract between the city and Dr. Mullen, and would not authorize Mullen to repudiate his contract with the city made by his election and acceptance of the office of city physician."

The receipts given by Dr. Mullen for the amounts paid him as city physician for the city of Selma, and the resolution of the council, were not estoppels, unless it appeared

that Dr. Mullen so received and considered them. Receipts may be explained, and the resolution amounted to nothing without the concurrence of Dr. Mullen. These were questions for the jury, and not for the court.

The charter of the city of Selma was not suspended, repealed or revoked by the rebellion, and if its corporate officers were elected or appointed as required by the statute of incorporation, they could go on and discharge their duties under the laws of the State as before the insurrection. There is no pretence that they were not so elected. There was no proof of treason, on this trial, against the corporation, and it will not be presumed that because the city was within the jurisdiction of the insurrectionary authorities, the corporation was engaged in committing treason. And attention to the "sick," even of the enemy, is not a belligerent act. It is a duty of humanity, which is excepted from the catalogue of crimes arising out of acts in aid and comfort of the hostile power. *Shortridge v. Macon*, (North Carolina,) June, 1867, Chief Justice CHASE, *arguendo.*

The objections made to the testimony of the plaintiff are the same as those afterwards raised in the charges and excepted to, and the charges asked and refused, or they were such as occasioned no injury to the defendant.

The judgment of the court below is affirmed.

SAFFOLD, J., *not sitting.*