Sneed, J.,
delivered the opinion of the court:
In the view we have taken of this case, it is unnecessary to consider some of the grave questions which have, been pressed in argument. 'A single one must he decisive of the rights of the parties. The controversy grows out of a calamity which befell the county of Hamilton, on the 30th *492 of September, 18Y6, -when the register’s office of that county was partially destroyed by lire, and the books of said offi.ce so charred and injured by the fire and also by the water used in its extinguishment, as to make it necessary to have some of them rebound, and others transcribed, as indispensable to their use by the public.
In this extraordinary exigency the county court, on the Monday following, proceeded to take immediate action for the preservation of said records, by the appointment of a commission, consisting of the county judge and two justices of said county, charged with the duty of having said books rebound and transcribed wherever the same was necessary to be done. This committee was authorized to let the work to the lowest bidder, and, in the work of transcription, to prefer the bid of the county register, if no higher than any other.
Under this authority, the committee proceeded to advertise for bids, and the lowest bid received was that of Spencer 0. Stone, one of the relators in this case. In the meantime, a bookbinder had been' employed by the committee to bind such of the injured volumes as required rebinding. The work had been done and the account audited and paid under the orders of the court. The action of the committee in closing the contract for transcribing the records was, from divers causes, delayed until the 12th of March, 18YY, when the contract was formally awarded to the said Spencer C. Stone, and a formal, written contract entered into and signed by him and the committee, with all proper specifications as to the mode and manner in which the work should be executed.
The plaintiff in error, the relator, II. 0. Beck, entered the lists as-one of the competing bidders for the: contract, but the compensation demanded by him being much more than the amount for which the said Stone proposed to do the work, the bid of the said Beck was rejected and the contract awarded to Stone. The action of the counity court-in appointing the committee and investing it with plenary *493 power to act in the premises, was duly entered upon the minutes of the court. On the said 12th of March, 1877, after the execution of said contract between Stone and the committee, and after the said Stone had taken and subscribed the oath required by the statute under which the proceeding was had, Code, sec. 2092 [Shannon’s Code, sec. 3772], the said Stone and the committee called upon the said Beck and demanded the book with a view at once to proceed with the work. This demand was refused, and the result duly reported to the next term of the1 county court. In the meantime, the legislature of the state being then in session, the record shows that the said register procured the enactment of a bill prepared by himself, entitled “An act to provide for transcribing record books when the same have been damaged or mutilated by fire, or otherwise.” This act prescribes that such work shall be done by the register of the county, and fixes his compensation at ten cents per hundred words, to be paid by the county. This act was passed March 24, 1877, and was approved by the governor on the 26th of the same month. [Acts 1877, c-h. 83; Shannon’s Code, secs. 37S7--3791.]
At the April term of said county court next thereafter, pending the consideration of the report of the committee as to the demand upon the register and his refusal to surrender the books, the said register appeared in court with a certified copy of said act, and demanded that under its •authority, he be allowed to proceed in the work of transcribing said records.
No formal action was taken upon this demand, except in the postponement of the whole matter until the following July term of the court.
This litigation soon afterwards commenced by a petition filed in the circuit court for a writ of mandamus- by the committee and Stone, as relators, against Beck, to compel him to surrender the books to Stone1 under bis contract of the 12th of March, 1877, and by a counter petition by Beck to compel the county court to allow -him to proceed *494 with, tbe work under tire provisions of the act of 24th of March, 1877, ch. S3.
These two causes were consolidated and heard together, and hot!1 were determined in favor of the relators in the first proceeding and against the relator Beck, against whom a peremptory writ of mandamus was awarded by the final judgment of the court, .from which he has prosecuted an appeal in error.
Without special attention to chronological order, this condensed resume of the leading facts is sufficient for our purpose, as the case must turn upon a single proposition independent of other questions of grave debate raised in the very able arguments of counsel.
Among other questions is that- of the constitutionality of the act of 1877, ch. 83, under which the relator, Beck,'as register of the county of Hamilton, asserts his right to do this work as paramount to that of all other persons. It is the settled policy of the law, illustrated in many adjudged cases, as well as by the immemorial traditions of the court, never to impeach the validity of a. statute which is taken to embody the will of the legislative department, unless it becomes absolutely indispensable to- the administration of justice.
The most delicate duty we are ever called upon to perform is that of sitting in judgment upon the transactions of a co-ordinate branch of the government, and while comity in a clear case would be crime, it is never ignored in a case where the judgment of the court may satisfactorily i epose upon any other question than one that impugns tiro, declared will of the legislature, upon the ground that it is repugnant to the organic law. Thus it is said: “While the courts cannot shun the discussion of constitutional questions when fairly presented,' they will not go out of their way to find such topics. They will not seek to draw in such weighty matters collaterally, nor on trivial occasions. It is both more proper and more respectful to a. co-ordinate department to discuss constitutional questions only when *495 iliat is the Tory lis mota. Thus presented and determined, the decision carries a weight with it to which no extra disquisition is entitled.” Hoover v. Wood, 9 Ind., 287.
Though, such a question may be legitimately presented by the record, yet if any other question be involved upon which the case may be determined, the constitutional ques-lion will be waived, and will only be adjudged when it is presented in a case which cannot otherwise bei disposed of, anu in which a decision upon it becomes absolutely necessary. Such is the rule of this court, and such the tenor of the standard authorities' upon the subject. Townsend v. Shipp, Cooke, 294; ex parte Randolph, 2 Brock, 447; Frees v. Ford, 6 N. Y., 177; White v. Scott, 4 Barb., 56; M. & O. R. R. Co. v. State, 29 Ala., 573; Cooley Const. Lim., 162, 163 [6th ed., pp. 196, 197].
Whether, therefore, the act of 1877, ch. 83, be nugatory and void because it suspends a general law, ■ as alleged, for the benefit of a particular individual, or whether it be obnoxious because it was not read three times before it was put upon its passage, as required by the constitution (Const. Team., art. 2, sec. 18), or whether tire rules and canons of parliamentary law, and the immemorial usages of legislative bodies would furnish a panacea for such an irregularity, are questions which, in this case, are not. necessary tc be determined.
We pass thus to the question upon which this controversy ,moy safely and satisfactorily rest.
Under the laws of this state, every county is a corporation, and the justices in the county court assembled are the representatives of the county, and authorized to act for it, and suits may be maintained against a county for any just claim as against other corporations; and process shall be served on the presiding officer of the county court. Code of Team., secs. 402, 403 [Shannon’s Code, secs. 493, 494]; 1 Yer., 387; 1 Sneed, 637.
They are public corporations, and as such are invested by positive law with the express powers essential to their *496 existence, and by implication, with tbe varied attributes necessary to tbe preservation of tbe corporate life'.
They are required by positive law to keep and maintain a public registry of deeds and other instruments which may be registered, and to this end to keep and maintain an ample supply of record books for the registration thereof. They are clothed, just as states and commonwealths axe, with certain police powers, which are not the creatures of legislation, and cannot wait upon legislation, but must be asserted just as the exigencies of the county demand, but always for public purposes, and within the scope and compass of their organization.
The principle upon which these police powers are exercised is the safety and welfare of the people, a sort of jus excelsior, that cannot wait upon delay. Salus populi est suprema lex. A necessity'which Lord Coke says makes that lawful which seeineth unlawful. 8 Ooke, 68.
The law, say Sir Matthew Hale, of a particular time, and place. Hale, P. 0., 54.
A necessity, says Iiobart, that even overcomes the law and defends what it compels. Iiobart, 144; Hale, P. 0., 54. In times of exigency, such powers have been exercised by public corporations from immemorial time, and are justified as the necessary incident of corporate entity.-
It would not be an easy task to maintain, that a county, upon which is imposed, by positive law, the obligation to keep ana maintain a public registry, could not, by implication of law, under its simple police powers, have done exactly the thing the county of Hamilton has done in this case. But we hold that the county was not without the warrant of positive law to make this contract. The spirit, if not the very letter of the statute, upon which the county has proceeded in the judgment of the court, fully vindicates that authority. The act of 1805, ch. 62, sec. 1, provides that the register of each county shall, once every year, lay before the county court all the records of 'his office for examination. The second section of said act provides *497 that “if the court find that any of said records have not been kept in well-bound books, or are not written in a fair and legible hand, or are likely to become useless from age or much use, or are without alphabets, they may cause such books as appear to be in such loose and irregular situation, to be transcribed, and alphabets to- be made for such as are without them, either by the register, or some other person, who, before commencing such transcript, shall take before some justice of the peace of the county, the following oath,” etc.
The statute prescribes the compensation of any person employed by the transcriber to assist in collating the transcript with the original, but is silent as to the compensation of the transcriber himself, thus leaving that matter open-to contract.
It prescribes, also, for making copies taken from said transcript, evidence, when properly certified. Code, sec. 2090 et seq. [Shannon’s Code, secs. 3770--3786]. The simple meaning of this statute is that the county is authorized to contract either with the register, or any other person, for the transcription of the records when they are likely to become useless from use, just as in this case, and it is utterly irrelevant and immaterial to inquire from what cause they become so.
"VVe see, then, that the county of Hamilton had the undoubted power, under the statute, to make this contract with the relator, Spencer C. Stone. Could this power to contract be delegated to the commission, who, in obedience to the order of the court, have arranged its details and committed the county to its obligations?
We see nothing irregular or unlawful in this. Corporations aggregate, both public and private^ are obliged to act by and through such agencies and instrumentalities as they may create for the purpose. The vital question is, was it for a county purpose, and did they have the power to direct the thing to be done?
*498 In tbe case of a municipal corporation, iit is not even necessary to tbe validity of tbe appointment of an agent, tbat tbe order of bis apopintment be entered of record. Smiley v. M. & A., Chattanooga, 6 Heis., 604. In tbe case now in band, tbe minutes of tbe county court show very fully tbe appointment of tbe commission, and tbat plenary powers to contract and to consummate tbe contract in every respect, were conferred, and more tban tbat, tbe record shows a recognition and ratification of tbe ag’emcy on tbe part of the court by tbe adoption of past performance, which obviates tbe necessity of anymore formal ratification, if any, indeed, was necessary. It is a f amiliar principle tbat where a ratification is established as to- a part, it operates as a confirmation of tbe whole of tbat particular transaction of tbe agent. Story Ag., sec. 250; Ferguson v. Carrington, 9 Barn. & Cress., 59; Corning v. Southland, 3 Hill, 552; Meekness v. Waters, 21 Missouri, 163. Tbe county of Hamilton thus has deliberately -bound itself by this com tract. It has done so through its lawfully constituted agents, which it clearly bad a right to do.
This- court has said that tbe counties of this state are clothed with tbe powers and attributes of corporations to a sufficient extent to be able to act and to contract, and whether this be by tbe action of tbe county court, or a vote of the people, or any other agency, can malee no difference. Louis. & Nash. R. R. Co. v. The County Court of Davidson et al., 1 Sneed, 687. A corporation may bind itself by an ordinance, which, in favor of private persons intended therein, may, if so intended, operate as a contract, or it may be bound by resolution or by vote, clothe its officers, agents, or committees with power to act for it; and a contract made by persons thus appointed by tbe corporation, though by parol, will bind it, unless it be one tbe law requires to be in writing. 1 Dillon, sec. 374 [3d ed., sec. 450]; Fanning v. Gregoire, 16 How., 524; Abbey v. Billups, 35 Miss., 618; Alton v. Mullidy, 21 Ill., 76; Clark v. *499 Washington, 12 Wheat., 40; Hamilton v. Railroad Co., 9 Ind., 359; Story Ag., 52; Selma v. Mullen, 46 Ala., 411.
We hold these general principles as applicable alike to counties as to other public corporations.
The 'county of Hamilton thus, is undoubtedly bound by this contract, and, on the other hand, the relator, Spencer C. Stone, is alike bound by its terms, and both alike have a vested interest in it.
How, under these conditions, how does this contract stand affected by the act of 1877, ch. 83, which was enacted after this contract had been entered into between the relator and the county of Hamilton? As concerns this contract, that act must be held utterly inoperative, nugatory, and void, because the obligation of this contract is not oirly impaired, but utterly abrogated by the statute. Both the federal and state constitutions solemnly inhibit the passage of any law that disturbs vested rights by impairing the obligation of contracts. Const. U. S., axt. 1, sec. 10; Const. Tenn., art. 1, sec. 20.
, This provision protects alike the contracts of states and commonwealths, and artificial and natural persons. Cooley Const. Lim., 274, 275.
The contract in question was a vested right which the legislature had no right to disturb, and we. must hold that the act of 1877, ch. 83, perhapAobnoxious in other respects than this, is fatally repugnant as applied to this contract, and as to it, wholly inoperative and void.
Let the judgment of the court below be, in all respects, affirmed, and a peremptory writ of mandamus be awarded from this .court, commanding the defendant Beck to surrender the books and records of his office, according to the mandate of that court.