No. 61.—THE SOUTH CAROLINA RAIL ROAD Co. plaintiff in error, *vs.* CASHEL MCDONALD, defendant.

[1.] The property of a foreign corporation, within the limits of this State, is liable to be attached under our attachment laws.

Attachment, in Richmond Superior Court—before Judge HOLT.

Cashel McDonald, as a creditor of the South Carolina Rail Road Company, sued out an attachment, returnable to the Court of Common Pleas of Augusta, on the ground that the said Company " resided without the State of Georgia."

At the return term of the attachment, the Court of Common Pleas, on motion dismissed the attachment, on the ground, that ".the defendant, being a body corporate, under the laws of South Carolina, and resident in that State, was not subject to the Laws of Georgia."

South Carolina Rail Road Co. *vs.* McDonald.

A certiorari was prayed, and granted by the Judge of the Superior Court of Richmond county, and upon hearing the same on 9th Sept. 1848, by consent, at Chambers, his Honor, Judge Holt, sustained the certiorari, on the grounds that foreign corporations, as non-resident, " are subject to the jurisdiction of our Courts, under the attachment laws of this State;" that inasmuch as the object of our attachment laws was " the recovery of debts, where the same cannot be done by the ordinary process of law," "the terms used being sufficient to embrace every class of debts and debtors, and nothing appearing in the laws which can, by a just interpretation, limit these terms to a particular class, the security which the law requires the attaching creditor to give, being available alike by natural and artificial persons, and the means of defence allowed to both being the same ;" the Court, therefore, "felt constrained to give the fullest effect to the attachment laws, as remedial and highly beneficial Acts, and so to construe them, as to include all " debtors, whether they be natural or artificial persons."

To which decision, the defendants below, by their counsel, excepted, and allege the same as erroneous.

E. STARNES, for plaintiff in error.

1st. In the construction of all Statutes, the *intention* of the maker is the thing sought for—"is the governing principle." *Dwarr. on Statutes,* 688, 690, 692, 718.    3 *Mass.* 21, 540.    5 *Mass.* 382.

But this intention must be ascertained from the "words" of the Act, (or of Acts *in pari materia,*) or "supported by the words" of the Act.    *Dwarr.on Stats.* 702.    *Ezekiel vs. Dixon,* 3 *Kel. R.* 146. 7 *B. & C.* 569.    1 *Kent Com.* 465.

2d. By a *liberal* or *beneficial* construction, even the Legislature cannot be held to have intended, in the use of the words of our attachment Acts, that they should be applied to corporations.

There are particular words in the Acts which " restrain" the terms of these Acts to natural persons.    2 *Cranch,* 341.    *Dud. R.* 154.

And there are provisions which have the same effect.    *Dud. R.* 35.

As a corporation cannot give special bail.    4 *Serg. & R.* 564.

3d. But these Acts must be strictly construed, as they are in derogation of the Common Law.

As a general rule, *remedial* Statutes must be liberally construed.

But such remedial Statutes as "restrain," or "repeal," or "derogate from" the Common Law, must be strictly construed. *Dwarr. on Stats.* 718, 728, 729. 13 *Pick.* 290. 9 *Ib.* 514.

These Acts are in derogation of the Common Law. 2 *Stew. & P.* 415. 3 *Ib.* 336. *Dud. R.* 34.

A case fully in point, is found in 16 *John.* 5.

If these Acts be strictly construed, of course they cannot apply to artificial persons.

. 4th. All our attachment Acts, *in pari materia*, are to be considered in determining the construction. 3 *Mass.* 21. 1 *Kent,* 463. 1 *Pick.* 254. 1 *Cranch,* 35. 1 *Kelly,* 35.

This being true, the Act of 1829 ought to be conclusive of this question. *Prince Dig.* 39.

5th. By the analogy of decisions made in the Courts, upon the question of the liability of corporations as garnishees, they are not subject to attachment or bail. 2 *Show.* 572. 15 *Serg. & R.* 176. *Pet. on Bail,* 23. 3 *Mass.* 37. *Dud. R.* 153.


A. J. MILLER, for defendant.


. 1st. The Attachment Law being *remedial,* is to be construed *liberally,* for the benefit of creditors. 14 *Johns. Rep.* 217. 6 *Halsted's Rep.* 171. 8 *Porter's Rep.* 404. *Dudley's Rep.* 153.

2d. An attachment may issue against a corporation created by and located in another State, *as a non-resident.* 8 *Porter's Rep.* 404. 15 *Serg. & Rawle,* 173. *Angell & A. on Corp.* 336.

3d. A corporation is *an inhabitant,* and liable to any suit that *a citizen* would b e. 2 *Howard's Rep.* 497.


*By the Court.*—NISBET, J. delivering the opinion.


[1.] The single question made in this case, is whether the property of a foreign corporation, within the limits of this State, is subject to our attachment laws? The Circuit Judge determined that it is subject ; the Judge of the Court of *Common Pleas of the city of Augusta,* held that it is not. Whilst upon this question, it is conceded that there is some conflict of authority, upon principle, and also upon the preponderance of authority, as well as upon a fair construction of our attachment laws, we

think that such property may be attached in Georgia. The jurisdiction of the Courts of Georgia is co-extensive with its sovereignty, and that embraces the persons and things within its territorial limits. The Courts of no independent State have any extra-territorial jurisdiction. This general proposition applies to the States of our Union, as well as to other sovereign States. Yet, it is unquestionably true, that the property of a citizen or inhabitant of a foreign State, within the limits of Georgia, is subject to the jurisdiction of our Courts. By the general law, and by the comity of States, the Courts of one State may seize and apply the property of a non-resident debtor, to the payment of his debts; may proceed against the property, and conclude the citizen of a foreign State, by a judgment *in rem.* *See these points discussed at length, in Dearing vs. the Bank of Charleston, determined at Milledgeville, in November of this year. Supra, P.* 497. The question, however, now before me, does not depend upon these general principles. The present question is, whether a creditor is entitled to the remedy at Law, by attachment, against a foreign corporation, which our Statutes give him against a natural person, who is his debtor. It will depend very much upon a construction of the attachment laws of our own State. The remedies afforded in Georgia, for applying the property of such persons as fall within their provisions, to the paymen of debts, by process of attachment, are created by the Acts of our own Legislature. It is not, therefore, necessary to discuss at all, the force and effect of any principles, upon which is based the process of foreign attachment, by the custom of London. Persons, by non residence, and by placing themselves in any one of the several predicaments described in the Statute, are not amenable to the jurisdiction of the Courts, by *the ordinary process of the law.* In such cases, before the passage of the attachment laws, there was no legal remedy by which the payment of debts could be enforced. *That* was the mischief to be remedied. These laws supplied the remedy. The remedy, now, is to attach the property or estate, as the law has it, of the debtor, or so much thereof, as will satisfy the creditor's demand and costs, wherever it may be found, whether in the hands of any one indebted to, or having effects of such debtor in his hands. The object of the law, as well as the condition upon which the remedy is to be used, is declared in the title of the Act of 1799. "Whereas, (says the title to the Act of '99,) it is just and proper that provision should

be made for the recovery of debts, when the same cannot be done by the ordinary process of the law, therefore, &c." The object is, to provide for the collection of debts; the condition upon which the remedy to collect may be used, is inability to collect them by the ordinary process of the law. The attachment laws are then remedial Statutes, and are to be so construed as to advance the remedy and to suppress the mischief. There is no necessity, in this case, to apply with very labored and subtle discrimination, the rules of construction. It requires no such effort to bring corporations within the provisions of the Act of '99. It is unquestionably to be liberally construed, as to the liability which it imposes upon debtors, and as to the rights, or rather remedies which it confers upon creditors; but strictly, as to all the terms and conditions upon which the remedy may be used, and the obligations enforced. We disclaim the power of this Court to subject corporations to the operation of this Act, upon the score of policy, if they are not within its provisions, fairly, reasonably, and liberally construed. We are not the Legislature, but the servants of the Legislature, to enforce its will, as declared according to the usual canons of interpretation, in the Statute, unless that will is in conflict with the State or Federal Constitution, or with the fundamental principles of the social compact. We are but the ministers of the law. We think that corporations are embraced within the provisions of the Act of '99, because the terms used in the Act, which describe the persons made subject to its operation, are descriptive of corporations. Those words are "person," "party," "defendant," "debtor." Either of these words describe a corporation. It is a person under the law—an artificial person, created by the Legislature. It has a name—a local habitation too. It is not a citizen in every sense of the word, but it is an inhabitant—it dwells where by law it is located. 2 *How. S. C. Reps.* 497. A corporation is a "judicial person"—a legal entity. For many purposes, it has a legal being, It can contract, own property, grant acquittances, convey titles, become the obligee of a bond, prosecute suits, appear, answer, and defend. Now where the law-making power uses the word *person*—where it is found in the Statute book, it is to be presumed that the *legal* meaning is intended, and not the social or ordinary meaning. The word is descriptive of all who are, in professional par-

lance, *persons*. So *party* and *defendant*, are words as applicable to corporations as to natural persons; because they may be, equally with natural persons, *parties* and *defendants*. The word, however, used in the act with most significance, and used most frequently, is *debtor*. It would seem that the General Assembly, by using that term, intended to guard against the very construction I am now combatting, to wit, that the act applies only to natural persons. That is a generic term, and embraces all who owe debts, whether natural persons, partnerships, or corporations. These are not merely verbal criticisms. These words constitute material parts of the enacting clauses of the Statute, and give to them significance. They define the class of persons which the Act makes liable to the process. If their meaning is ascertained, then is the meaning of the provisions of the Act of '99 ascertained. Upon complaint made upon oath by a creditor, that his debtor resides out of the State, &c. so that the ordinary process of the law cannot be served upon him, it is made the duty of judges and magistrates to grant an attachment against such debtor. Now, in these provisions are found the grant of the remedy —the designation of those who are liable to its use, and the conditions upon which its use depends. They contain the soul of the Statute. They create the remedy and impose the liability. Judged by them alone, it is impossible to believe that the Legislature, by debtors, meant natural persons alone. It is said, however, that the meaning of the general terms employed in the Act, is controlled and limited by other clauses and provisions. We shall see.

Again, it is clear that a corporation may occupy one of the positions, to-wit: the position of a non-resident, in which a debtor must be placed before the attachment can issue. It may reside out of the State, and hence, we infer, that the Statute applies to it. We have seen that a corporation is an inhabitant, or resident of the State, where, by law, it is located. In that State, therefore, where it is not located, it is a non-resident. If it does not reside in Georgia, it resides out of the State, and falls into that predicament in which the process by the Act is authorized to be issued. And this is the only condition upon which it could be at all made liable to the process. The Legislature has actually given to creditors all the remedy which it would be possible now to give against a corporation, were it anew to undertake to prescribe

remedies. It can not abscond, nor remove, nor conceal itself, nor stand in defiance of a peace officer, but it may reside out of the State. But it is argued, that because it cannot do these things, we are therefore to infer, that the Legislature did not contemplate a corporation—it is said, in other words, that it contemplated only such persons as are capable of absconding, removing, concealing, &c. and inasmuch as corporations are incapable of doing these things, they are not embraced in the Act. If it was necessary that a debtor should reside out of the State, abscond, remove and conceal himself, and stand in defiance of a peace officer—if it was necessary for him to fulfil all and each of the conditions prescribed, before an attachment could issue, why then, the argument would be irresistible. The demonstration of this necessity is indispensable to give to it the least force. But so far from this being necessary, it is clear that the process will issue upon the happening of any one of the contingences named in the Act. Nay, more, it is obliged to issue upon a single ground, and if more than one is taken in the complaint on oath, it will be fatal to the suit. The Statute declares that the process shall issue upon complaint on oath, that a debtor resides out of the State, *or* absconds, *or* is removing, *&c.* It is the right of the defendant to traverse the ground taken by the plaintiff, and he must be distinctly and singly notified upon what ground the plaintiff relies.

Whilst upon this branch of the discussion, I refer to another reason urged by counsel why corporations are to be excepted from the operation of the Statute. The reason is, that in 1799, when the Act was passed, there were but few corporations in this country, and because of that fact, it is to be presumed that they were not intended to be embraced in it. It is very true, that at that day, there were comparatively few corporations in the States of our Union. Yet, there were corporations in the Union—in England—in almost all the States of Europe. Since that day, corporations, both public and private, have multiplied enormously, and the importance of that part of the legal science, which defines their rights and liabilities, is more seriously felt than it was then; and it is true, also, that the law of corporations is now much better understood than it was at that time. Still, corporations for commercial, and political, and municipal purposes, were then, as now, known to the law, and to all intelligent

legislators. They were known at Rome—introduced into Britain whilst a Roman province—were sanctioned by the Common Law—introduced into this country whilst the States were Colonies, and created by legislation in the Union, after the declaration of independence. The Legislature of Georgia could not have been either ignorant or unobservant of these facts. Certainly they did know and did consider, that there were abroad in the world, such institutions, and that they were capable of contracting debts. They must have known and considered that corporations can as well become *debtors*, as natural persons.

Again, it is insisted that the meaning of those general clauses of the Act, to which I have referred as embracing corporations, is limited by other provisions. Thus, it is said, they cannot include corporations, because, by subsequent provisions, the right of replevying the property attached, is given to the defendant, upon condition, that he appear and put in special bail, and as corporations cannot put in special bail, they cannot replevy. The argument, differently stated, is this: A very important privilege, that of *replevy*, is given to defendants in attachment, upon a condition, with which corporations, from the very nature of their constitution, cannot comply, and therefore, they must be excepted from the operation of the Statute. Let it be taken, for the sake of this argument, as true, that the Act does not allow a replevy, unless the defendant shall appear and put in special bail. And let it be conceded, (for it is true,) that a corporation being an intangible, invisible, legal entity, cannot put in special bail, because it is incapable of a personal surrender—still it is questionable, whether corporations would not be liable to attachment. There are no exceptions in favor of corporations in the Act—its terms apply to and embrace them. The inability grows out of the nature of the corporation. This being so, the construction of the Statute might be reasonably made, not that a corporation, defendant in attachment, could not replevy, but that it would be entitled to replevy without complying with the condition, that is, without putting in special bail. This point was decided in an analogous case—the case of *Carpentier vs. The Delaware Insurance Company*, 2 *Binn.* 264. In that case, it was contended that the plaintiff could not enter a rule of reference, because the defendants were a corporation—that in every case intended to be referred, an appeal was given, but that in no case could it be obtained by a defendant, without

South Carolina Rail Road Co. *vs.* McDonald.

entering into a recognisance, conditioned to pay the debt and costs, or to surrender himself to jail; and that a corporation could not give such a recognisance, because it could not be surrendered. It was contended that the right of appeal was upon condition that the defendant put in special bail, and as a corporation could not do that, it must be excepted from the operation of the law, which allowed a rule of reference to plaintiffs. Just the case here. In that case, the Chief Justice said : " It is clear that one of the alternatives of this condition is not applicable to a corporation, which is not a natural but a political body, incapable of being surrendered or imprisoned. I agree, that the form of the recognisance is not applicable to a body corporate, but from this I draw a different conclusion from them. *I do not infer that the defendant can have no appeal, but that he may have an appeal without entering into any recognisance.*" The exact point made by the plaintiff in error here, was made in Pennsylvania, under the attachment laws of that State. It was there claimed that corporations are not within the Act, because, it provides, " that if the plaintiff in attachment obtain verdict, judgment and execution for the money and goods in the garnishee's possession, yet the defendant in attachment may, at any time before the money is paid, put in bail to the plaintiff's action, upon which the attachment is grounded, whereby the garnishee will, and shall be immediately discharged." The exception of corporations from the operation of the attachment law of that State, was claimed, because the condition of replevy was such as they could not comply with, to-wit: put in bail to the action. Just so in the case at this bar. The Court ruled in the Pennsylvania case, that corporations were within the Act, sustaining the view taken by the Court in *Carpentier vs. The Delaware Insurance Company.* Rogers, J. delivering the opinion of the Court, said : " Granting merely for the sake of the argument, that 'bail to the plaintiff's action,' as used in the Act of Assembly, means special bail only, and agreeing, as I certainly do, that a corporation cannot enter special bail, yet it by no means follows, that the effects of foreign corporations cannot be attached under the Act of 1705." After commenting approvingly on the case of *Carpentier vs. The Delaware Insurance Company,* he proceeds, " In this case, I do not infer that the effects of foreign corporations cannot be attached, but should infer, were it not for considerations that I shall state,

*that the attachment should be dissolved by entering an appearance without bail."* Bushel vs. Commonwealth Ins. Com. 15 Serg. & Rawl. R. 176.

The argument of counsel for the plaintiff in error, might be considered as fully answered by this view of the question, supported by the two cases referred to. But we do not rest our judgment alone upon that view of the question. This is a much stronger case than the case in 15 S. & R. There the replevy by the Act, depended upon the putting in of special bail, here, by our Statute, it does not. The defendant, by the Act of '99, is entitled to replevy the property attached, by appearing and putting in special bail, *or by giving bond, with good and sufficient security to the Sheriff, or other officer serving the process, conditioned for his appearance at the Court to which it is returnable, and abiding and performing the order and judgment of that Court.*

He is not required to do both—if he gives the bond and security, the property is replevied. The alternative seems to have been provided to meet the case of corporations. They are under no inability to give bond, and are deprived of no right of replevy which the Statute gives to a natural person. Nor, I may say of any other right of any kind, which it confers upon natural persons. They can appear—plead—give bond—replevy. What more do they want? They are not entitled to special favors in our Courts of Justice. They are entitled to equal rights with other persons, and no more. And the plaintiff in attachment is as fully protected by the bond of a corporation, as he is by the bond of a natural person. Let the remedies of the plaintiff on that bond be what they may, (and about them it is unnecessary to express an opinion,) they are the same against a foreign corporation that they are against the citizen of a foreign State, when he replevies by giving bond.

It is said that the Act of 1829 is *in pari materia* with the Act of '99, and that construing the two together, the inference is deducible, that corporations are not embraced in the latter Act. As the Act of '29 is amendatory of the "several attachment laws of this State," I see no objection to considering it as *in pari materia*, with them. I recognise the rule, too, that Statutes *in pari materia*, are to be construed together as one Statute. As to one Statute, a familiar rule of construction is, that it is to be so construed, as that all of its provisions may stand. Applying this

rule to the two Acts of '99 and '29, I see nothing in them to warrant the inference drawn by the counsel for plaintiff. They are not at all in conflict. The Act of '99 may embrace corporations and not in the least interfere with the Act of '29. The latter is an Act to subject the property of *foreign Insurance Companies*, within this State, who conduct their business here by agents, to attachment, at the instance of the *insured*. It provides the manner in which it may be done, &c. Now, this is express legislation, by virtue of which, one class of creditors may attach the property of one kind of foreign corporations. But it leaves the rights of all other creditors against that class of incorporations, and against all other corporations, precisely where it found them under the Act of '99. We give full effect to the Act of '29, as the latest declared will of the Legislature, so far as it goes. To the extent that it does not go, the prior Acts are in full force. If, under the prior Acts, other corporations were liable to attachment, and *Insurance Companies* were liable to attachment at the instance of other persons who are creditors, than persons insured, why surely, they are still liable. There is no repugnancy between the two; both may, and in our judgment, must stand.

If it be said that the Act of '29 is a legislative construction of the Act of '99, by which it has impliedly declared its opinion, that corporations are excepted from that Act, then our reply is, conceding that it is so—however, in cases of doubt, we might respect such an opinion of the Legislature thus expressed by implication, yet, in cases where we have no doubt, or little doubt, we would not regard it. So long as the General Assembly permits the Act of '99 to remain unrepealed, being convinced that it applies in its terms and spirit to corporations, we shall give it effect against them.

There is one rule of statutory construction recognised in England, and by the Supreme Court of the United States, which is conclusive of this question. It is this. Corporations are to be deemed and considered as *persons, when the circumstances in which they are placed are identical with those of natural persons, expressly included in a Statute.* Thus, in England, a corporation seized in fee of lands for its own benefit, was considered an *inhabitant* or *occupier*, within the meaning of the Statute 42 *Eliz. Ch.* 2, and liable in its corporate character to be rated for the poor tax. *Cowp.* 73. To the same effect, see *Lord Coke,* 2 *Inst.* 703, also

*The People vs. Utica Insurance Company*, 15 *Johns. R.* 381, 382.

In *Beaston vs. The Farmer's Bank of Delaware*, the Supreme Court of the United States say, "No authority has been adduced to show that a corporation may not, in the construction of Statutes, be regarded as a natural person, whilst, on the contrary, authorities have been cited, which show that corporations are to be deemed and considered *as persons*, when the circumstances in which they are placed, are identical with those of natural persons expressly included in such Statutes." Natural persons are expressly included in the Act of '99, and it requires but a glance to see that corporations located abroad, and being debtors, are placed in circumstances identical with those of natural persons, residing out of the State, who are also debtors. The case of *Beaston vs. The Farmers' Bank of Delaware*, sustains so fully the construction which we put upon our attachment law, that a more specific reference to it, I am sure, will be excused.

It is a long case, and involved several questions. Among them this—whether a corporation is included in the provisions of the Act of Congress, which gives a preference to the United States, in the distribution of the effects of revenue officers and other persons becoming indebted to the United States, and afterwards proving insolvent. The section of that Act referred to, is in these words, "That when any revenue officer, *or other person*, hereafter becoming indebted to the United States, by bond or otherwise, shall become insolvent, or where the estate of any deceased person in the hands of executors or administrators, shall be insufficient to pay all the debts due from the deceased, the debt due to the United States shall be first satisfied, &c." Corporations are not, in terms, embraced in the Act, nor are they excepted. Those persons named, and expressly included, are designated as revenue officers and other *persons,* and in a subsequent part of the Act, as *debtors*. The meaning of Congress, clearly, was to include *persons indebted* to the United States. In construing this Act, the *Supreme Court* say, "All debtors to the United States, whatever their character, and by whatever mode bound, may be fairly included within the language used in the Act of Congress." The point was, whether *corporations* were included, and the Court determined that they were. They farther held that, if a corporation can be brought into any one of the predicaments stated in

the Statute, it will be sufficient to include them.   Mr. J. Story
dissented from the judgment of the Court, upon the ground, prin-
cipally, that a corporation could not be included in the Act, be-
cause it could not be placed in all the predicaments stated.   For
example, he said, that if corporations could be supposed to be
*deceased debtors,* " yet, by no reasonable use of language, can they
be said to have executors or administrators."   Upon the same
ground, this learned jurist could not have dissented from a similar
opinion on our Act of '99, because the predicaments stated in
that Act, are in the alternative.   His dissent, therefore, does not
at all weaken the authority of the case.   How remarkably alike,
in important particulars, are the Act of Congress, and the Act of
Georgia of 1799.   Both, in terms, include *persons who are indebted.*
If by the judgment of the Supreme Court, corporations are inclu-
ded in the former, *they must be included in the latter.*    12 *Peters'*
*R.* 102.    *Also, see United States vs. Amedy,* 11 *Wheat.* 392.

In *The Planters & Merchants Bank of Mobile vs. Andrews,* 8
*Porter,* 404, the *Supreme Court of Alabama* decided, that under
the attachment laws of that State, the term *person* embraces not
only natural, but artificial persons, and that a corporation is a per-
son within the meaning of those laws.   The same doctrine was
held under the attachment laws of Pennsylvania, in the case of
*Bushel vs. Commonwealth Ins. Co.* 15 *Serg. & Rawl.* 176, *already*
*referred to, and is approved by Angel & Ames.   See A. & A.* 337.
*See also,* 1 *Story's R.* 531.    9 *Conn. R.* 430, *and* 9 *N. H. R.* 394.
The doctrine was differently settled in the matter of *McQueen vs.*
*Middletown Man. Co.* by the Supreme Court of N. Y.   16 *Johns.*
*R.* 5.   The reasoning of the Court in that case, is not very satis-
factory.   And, moreover, the provisions of the Statute of New
York, upon which that decision was made, are somewhat differ-
ent from those of our own Act.   The New York Statute pro-
vides that the debtor may give security to the creditor, to appear
and plead *to any action to be brought* in any Court of Law or
Equity in the State, within six months, by the creditor against
him; and to pay such sum as may be recovered against him in
such action, and if that is done, the Judge who issued the war-
rant of attachment shall issue a supersedeas to the warrant.   The
Court were of the opinion that the Act supposed that the person
giving security, would, if within the State, be subject to a suit,
and that, as a foreign corporation could not be sued in New York,

because service could not be perfected on it there, it could not be intended to apply to corporations. The Court thought that the Legislature contemplated a liability to arrest. The New York Statute is distinguishable from ours in this ; that Act supposes a suit to be brought, to which the party binds himself to appear and plead, and to pay the sum therein recovered ; that is, an independent suit, distinct from the attachment, and of course, it supposes the service of such suit. Our Statute contemplates no such independent suit ; the bond which it requires, binds the defendant to appear at the Court to which *the attachment is returnable,* and to abide by and perform the order and judgment of that Court. It therefore contemplates no service of any suit, save that which has been already perfected *in rem,* and which, in case of a foreign citizen, even, is a legitimate service. The reasoning, therefore, of the New York Court, if fully applicable to the law of that State, is not applicable to our Act.

Foreign corporations are, equally with natural persons, entitled to the remedy by attachment, in our Courts—the right and the liability ought to be reciprocal. If politic considerations are to be taken at all into the estimate, it is obviously politic, and justly so, that corporations, whose property within our limits receives the protection of our laws, should be held liable to those laws, so far as they can be reached through that property. If allowed to contract and enforce debts by the laws of this State, their property within its jurisdiction ought to be, in policy and in justice, made liable to the payment of their debts.

Let the judgment be affirmed.