JOHN LOUDON, assignee, plaintiff in error, *vs.* BLANDFORD
& GARRARD *et al.*, defendants in error.

1. The assignee of a bankrupt has the right to be made a party to a rule to distribute funds in the hands of a receiver, raised from the sale of the bankrupt's property by order of the state court, and to contest the demands of the creditors claiming liens and judgments thereon.

2. The state court will distribute the fund in accordance with law, the bankrupt law of the United States constituting, on the question of such distribution, the controlling part of such law.

3. Attachments on the property, the sale of which raised the fund, if levied within four months of the adjudication in bankruptcy and dissolved by order of the state court, lose their lien upon the fund; and such lien is not revived by general judgments obtained after the adjudication, nor can such judgments claim the fund in preference to the assignee.

4 A distress warrant for rent levied on the property, the proceeds of which is for distribution, before the adjudication in bankruptcy, should be paid out of the fund which represents the property distrained,

5. Justice court judgments fairly obtained before the adjudication are entitled to be paid.

6. A mechanic's lien properly recorded within three months and sued by attachment within twelve months, and not sued again after the attachment was dissolved because of the bankruptcy of the debtor, is entitled to payment and will rank from the date of the lien.

7. The costs of the officers of court and commissions of the receiver should be first paid.

8. If any of the claimants be legally entitled to the whole fund, after the assignee is fairly heard on any issue he may make, the assignee's interest in the whole fund is at an end, and such claimants may divide it among themselves and other chaimants as they see fit, and a consent order, or judgment of the court, to that effect will not be disturbed by this court.

9. The assignee in this case having a bill pending in the United States court to set aside the sale of the property that brought this fund into the state court, must first dispose of that case before he can claim any part of this fund to be paid to him. Upon satisfactory evidence being furnished the court that he has dismissed his bill in the United States court, the part which may be left should be paid to him; otherwise it should be held to await the result of that bill in that court.

Bankrupt.  Attachment.  Mechanic's lien.  Distress Warrant.  Judgments.  Costs.  Before Judge JAMES JOHNSON.
Muscogee Superior Court.  May Term, 1875.

Reported in the opinion.

Loudon *vs.* Blandford & Garrard *et al.*

R. J. Moses, for plaintiff in error.

Blandford & Garrard ; Peabody & Brannon ; G. E. Thomas, for defendants.

Jackson, Judge.

A fund of some $1,500 00 was in the hands of Charles Coleman as receiver, which was raised from the sale of certain property of the Empire Cotton Seed and Huller Company. The property had been levied on by attachments and judgments from various courts, and was sold by order of court, and went into the hands of the receiver. Blandford and Garrard, representing one of the judgments as assignees thereof, moved a rule for the distribution of the fund and claimed that they were entitled to be paid, because they had attached the property and had obtained a general judgment against the company. This general judgment was had after the adjudication in bankruptcy. Their attachment was sued out within four months of the time when the defendant, the Cotton Seed Company, was adjudged a bankrupt, and so were the other attachments levied ; and they were all dissolved by virtue of the bankrupt law and by order of the superior court of the county of Muscogee. Various parties to the rule were made claiming the fund or parts of it, among them the plaintiff in error, the assignee in bankruptcy of the Empire Cotton Seed and Huller Company, who represented to the court that he was entitled to the fund as such assignee; that there were a large number of creditors not in the rule whom it was his duty, as such assignee, to protect; that he had filed a bill to set aside the sale of the property in the district court of the United States, and he prayed that he be paid the fund to hold to await the result of that suit, for the creditors if the sale was not set aside, and to be paid back to the purchasers if it was. He attacked all the judgments which claimed the fund, and set up his own claim thereto as such assignee.

The court below ruled that he had no right to interpose, and all the other claimants assenting thereto, passed an order

distributing the money among them as they agreed. The question is, was the assignee a proper party to the money rule, and did he have a right to the fund or any part thereof?

1, 2. In respect to the first question, we think it clear that he had a perfect right to be made a party to the rule, and to be fully heard thereon upon such issues as he might make in law or in fact, attacking all or any of the liens which claimed the money. The assignee represented the bankrupt. The moned raised from the sale of the bankrupt's property was to be distributed. Why should he not, considering him merely as the legal representative of the bankrupt, be a party to the rule, and see to it that the fund was properly distributed, and attack such creditors as the bankrupt, had he not gone into bankruptcy, might have attacked. But he, the assignee, is not only the representative of the bankrupts, but the trustee for all the creditors, and it is his duty to protect the common fund. This ruling here is not at all inconsistent with the previous rulings of this court in the case of *Freeman vs. Fort et al.,* 52 *Georgia,* 371, and the case of *Ballin & Company vs. Ferst et al.,* 55 *Ibid.,* 546. The first was a creditor's bill, an equity proceeding, and it was held that the trustees appointed in lieu of the assignee could not, on mere motion in such a proceeding, have the fund in the hands of the court's receiver turned over to the bankrupt court. It would require some action by that court—an injunction against the parties by regular bill or some equivalent process—before the state court would turn over the assets in its custody to the United States court. The other case was also a proceeding in equity, and there it was held that on petition, supported by proper record evidence, the state court would order the assets turned over to the bankrupt court to be there administered. It was also there held that the trustees in bankruptcy were entitled to assets seized on *mesne process* within four months of the adjudication, provided the *mesne process* was not founded on a previous contract lien, and an injunction had been granted by the United States court. But this is not like either of those cases. Here the circuit court had the funds in hand in the possession

of the receiver, and it is right that it should distribute these funds according to law, including the bankrupt law. If there were lawful liens duly foreclosed, or judgments duly obtained, and these liens were not in conflict with the provisions of the bankrupt law, that law being paramount, this court has held, and still holds, that the state court will dispose of the fund in its hands to the payment of those liens; but it has never held that the assignee of the bankrupt and its only legal representative, his own mouth being closed, may not be heard upon the question of how the fund should be distributed. It would be very strange if nobody could represent the debtor whose property was being disposed of, and if it were the law that the creditors *before the court* could have an order passed dividing it out to suit themselves, over the head of the assignee objecting to such order and representing the other creditors.     We feel constrained therefore, to reverse the judgment of the court below, and to direct that the assignee be allowed to contest on issues of fact, if he has any to make, such of these claims as he may attack for fraud, and on matters of law such as he may deem illegal. The record shows that he was not permitted to do so, not even to the extent of seeing that the liens were properly proven. Inasmuch as the case will go back to be heard again, and it may facilitate the trial of the issues so made, we go further and express the opinion of this court on the points of law involved, so far as this record discloses them.

3. The attachments which were dissolved by the order of the court below, in accordance with the bankrupt law, lose their liens and cannot claim this fund, or part thereof, in consequence of such liens by attachments: Bump., 8th ed., p. 595; *Ballin & Company vs. Ferst & Company*, 55 *Georgia Reports*, 546. If general judgments, by service of the bankrupt or his agent, or otherwise, were obtained on these claims which were thus levied by attachment, such judgments, *obtained after the adjudication in bankruptcy*, have no lien, and should not be paid.

4. If a distress warrant were issued for rent and levied be-

fore the adjudication, and the fund was the proceeds of the property so levied, it should be paid out of such part of the fund as the property distrained, when sold, brought into court: Bump., p. 585, and cases cited.

5. If justice court judgments were fairly obtained prior to the adjudication, such judgments, being liens on all the property of the debtor, should be paid, there being nothing in the bankrupt act providing for the dissolution of such liens, they being *final process:* Bump., page 594, and cases cited under the head of executions. If fraudulently or collusively obtained they should not be paid : See Bump., p. 594, *et seq.*

6. If mechanics held a lien on the property sold, duly recorded within three months, and brought suit thereon in twelve months by attachment, their lien attaches from the date of the work done or material furnished and not from the attachment or by virtue of the attachment, and it is not lost by the dissolution of the attachment but should be paid: Bump., p. 591; *In re* Hoyt, 3 Biss., 436: Code, sections 1959, 1963.

7. The costs of the officers of court and the commissions of the receiver should, of course, be paid first of all.

8. If the lien of any of these creditors should sweep the whole fund—that is, any lien not inconsistent with the bankrupt law—there would of necessity be nothing left for the assignee, and it would be no business of his how the fund was distributed. In such event, the parties interested may divide as they see fit. If, for instance, the mechanic's lien should take, it would exhaust all the fund, and if the holder of that lien chose to divide with others, no one would have the right to interpose. If the assignee should represent any creditor who holds a lien superior to any or all of these, then that creditor would be entitled to be paid first, and the fund should not be paid to others. On the whole, we send the case back because we think that the assignee, as the representative of the bankrupt and of the creditors not in person before the court, has the right to be made a party to the rule, to see that no illegal or fraudulent claim is paid, to the detriment

of the bankrupt's estate or of the creditors thereof whom he represents.

9. If the court should ascertain that the fund is not exhausted in the payment of the liens of creditors claiming it, then the balance, we think, should be paid to the assignee upon his relinquishment of all claims upon the property sold, and the dismissal of his bill to set it aside, satisfactory evidence of which should be furnished to the court. He cannot go upon the property and the fund both. He must elect which he will take, and a reasonable time should be allowed him to make his election, if the fund is not exhausted by such liens before the court as he cannot overthrow after a fair hearing. The trial of these, however, and the payment of such as are proper liens under the foregoing directions, should not be postponed to await such election. If he choose to go on with the bill, the part of the fund left, if any, will be held to abide the event of that bill.

We reverse the judgment on the ground that the assignee has the right to be made a party to the rule and to be heard thereon.

Judgment reversed.