John Loudon, assignee, *et al.,* plaintiffs in error, *vs.* Charles Coleman, receiver, *et al.,* defendants in error.

1. A corporation engaged in the business of making and repairing machinery, was entitled to the lien of a machinist, under section 1966 of Irwin's Code, the same as a natural person so engaged.

2. When the property subject to a duly recorded machinist's lien was sold under legal process before any suit was brought to enforce the lien, and before the time for suit had expired, the lien attached upon the proceeds of the sale in the hands of the officer. Irwin's Code, §§ 1961, 1962. Any writing importing an assertion of the lien, which came to the hands of the officer at or before the sale, was a sufficient notice to hold up the money, if the purpose of a more regular and direct notice was accomplished, and if the lien was afterwards, while the money was in court, urged as a claim upon the fund.

3. A machinist whose lien has not been established by regular judgment, must, in asserting his lien upon the fund, prove all the facts requisite to the existence of the lien which he asserts. His lien will be recognized for only so much of his claim as he manifests to be within the law. Where some of the claim is a running account, and the rest is no part of the account, and, so far as appears, never was, but is covered by an accepted draft payable to the order of a third

person, the two matters are, *prima facie*, separate, and each complete in itself. A record of the lien in time for the one may be too late for the other.

4. Construction, or original furnishing and fitting up, being distinct in its nature from subsequent repairs, the law, in the absence of evidence to the contrary, will presume that it took place under a distinct engagement.

5. Where a machinist merely manufactured or sold materials for repairing machinery, and did not concern himself with uniting the materials to the machinery, he was not entitled to a lien for the price, under section 1966 of Irwin's Code. Nor was he entitled to such lien for repairs made at his shop on detached parts of machinery brought there to be mended, if he did not detach, nor restore them to position These propositions might not hold good, if there was a general contract for keeping the machinery in repair for some period of time, and the sales and labor were in part execution of that contract.

6. On a motion to distribute money, where several independent claimants compete for the fund, and the whole is awarded to one, some of the defeated claimants may move for a new trial without making the others parties to their motion. The successful claimant, and the custodian of the fund are the only necessary parties besides the movants themselves.

7. When the presiding judge has entered on the motion for new trial the word "approved," and signed the same, it is a sufficient verification by him of the matters of fact recited in the motion.

8. When the motion for new trial was heard and decided at chambers (under an order granted in term) on the 13th, and the brief of evievidence was agreed upon by counsel, in writing, as correct, the fact that the judge's approval, as entered and signed thereon, is dated the 16th, the same day on which the certificate to the bill of exceptions bears date, is not material. The brief is well enough identified by such approval, and may come up as a part of the record.

9. Where it appears that the judge refused to charge so and so, but there is no direct statement that he was requested, either in writing or otherwise, it should not be assumed in the supreme court, over his refusal to grant a new trial, that a request was made in proper time and manner.

Machinists' lien. Corporations. New trial. Parties. Practice in the Superior Court. Practice in the Supreme Court. Charge of Court. Before Judge CRAWFORD. Muscogee Superior Court. May Term, 1877.

Reported in the opinion.

R. J. Moses; C. H. Williams, for plaintiffs in error.

Peabody & Brannon; Blandford & Garrard; G. E. Thomas, for defendants.

Bleckley, Judge.

After this litigation was remanded to the court below by the judgment of this court in 56 *Ga.*, 150, another trial took place, which resulted in awarding the whole fund to the Columbus Iron Works Company. Loudon, the assignee in bankruptcy, and Mrs. Smith, plaintiff in the distress warrant for rent, moved for a new trial, and the motion was overruled.

1. The claim of the Columbus Iron Works Company was a recorded lien in favor of that company as a machinist. The company is a corporation. Objection is made, that as the law stood at the date of this transaction (1872), the lien of a machinist could not arise in favor of a corporation. The statute (Irwin's Code, § 1966) declares, " Any machinist who may furnish or put up, in any county in this state, any steam mill or other machinery, or who may repair the same, shall be entitled to the same lien on such machinery and the premises to which the same may be attached, and may enforce such lien in the same manner, and with the like benefits, privileges and restrictions, as those which apply to mechanics." Machinist, according to Webster, is " a constructor of machines and engines, or one well versed in the principles of machines." Though a corporation cannot answer to the latter of these two definitions, it can to the former; not it is true, in a strict sense, but in a general sense. A corporation, considered in itself, can construct nothing—can do nothing. It must employ the faculties of natural persons, for it has no intellect, will, or organs of its own. It is, in fact, a myth, a fiction, and has no existence but in the imagination of the law. The law calls it a creation of the sovereign authority, and treats it as a person. It may be a car-

rier, a banker, a manufacturer, an insurer, etc. Why, then, may it not be a machinist? If it be said it has no skill in machinery, and cannot construct a machine, the observation, literally taken, is quite true. But can it transport a bale of goods, or sign a bank note, or weave cloth, or execute a policy of insurance? By itself it cannot, but by its agents and employees it can. Through the like instrumentalities, it can contstruct machines and repair machinery. The skill it employs and pays for is, in contemplation of law, the same as its own. It is thus within the reason and spirit of a statute, whenever the circumstances in which it is placed are identical with those of natural persons expressly included in the statute. 5 *Ga.*, 541, *et seq.* Of course, for the Columbus Iron Works to have the lien of a machinist, the business should be within its charter. The charter is not before us, but the evidence in the record is, that the business of the corporation was that of a founder and machinist —that it made castings and machinery, and repaired machinery.

2. Generally, action for the recovery of the amount claimed under a mechanic's or a machinist's lien, would have to be commenced within twelve months from the time the claim became due. Irwin's Code, § 1963. But this must be taken in connection with the two preceding sections, which are in these terms: " If any house, or premises, or other property, on which there is a mechanic's lien, be sold by any process from the courts of this state, the purchaser shall obtain the full title, and the lien shall attach to the proceeds of the sale, upon notice by the mechanic to the officer to hold the money until the next session of the superior court for that purpose. If the claim of lien be disputed by either plaintiff or defendant in the process or decree on which the money was raised, an issue shall be ordered and tried as in other causes; and if it be determined against the claimant, he shall pay such damages, not exceeding twenty per cent., as the jury may assess, with interest from the date of the notice to retain, and costs." These provisions are pre-

served in the Code of 1873, section 1990. We have already seen that by section 1966 of Irwin's Code, a machinist may enforce his lien " in the same manner, and with like benefits, privileges and restrictions, as those which apply to mechanics." In the present case, the property, with some other property of the debtor, was sold under attachment, by special order of the judge, on petition of the attaching creditor. At the time of the sale, the sheriff who made it had in his hands a *fi. fa.*, which had been issued on a foreclosure of this lien in the manner applicable to another class of liens. That *fi. fa.* was subsequently quashed as illegal. 53 *Ga.*, 433. The sheriff, however, reported it to the court as one of the claims upon the fund, and the fund went into the hands of a receiver. It seems that the receiver became bankrupt, and another receiver was appointed, by whom so much of the fund as could be recovered from the estate of his predecessor, was reduced to possession. This part of the fund being before the court for distribution, the Columbus Iron Works Company appeared as one of the claimants thereto, resting its claim upon the lien we are considering. The sale by the sheriff was made long before the twelve months for commencing suit upon the lien had expired; and, moreover, the debtor, who was a corporation of the state of New York, became bankrupt before said twelve months had expired, and its assignee in bankruptcy was a resident of New York, and never was a resident of Georgia. When the Columbus Iron Works Company appeared in court as a claimant of the fund, the time for suing upon its lien had run out—indeed, that time had been out some two years. The lien was not lost by reason of not commencing an action. The company had the whole twelve months within which to sue. Pending that period, the property was sold by the sheriff under other process. That brought the case within sections 1961 and 1962 of Irwin's Code; and the regular course was to give notice to the officer to hold the money until the next session of the superior court. If a formal notice, to that effect, had been given, it would

have been the appointed substitute for an action, and, without doubt, would have been sufficient. But no formal notice was given; and the question is, whether, under the circumstances, the invalid *fi. fa.* in the sheriff's hands at the time the sale was made, and which was reported to the court in the sheriff's return, can be treated as a virtual notice. That *fi. fa.* was based on an affidavit made by an officer of the Columbus Iron Works Company, setting up this lien and calling for its enforcement in the summary method applicable to liens on steamboats, etc. On that affidavit, the judge of the superior court granted an order for the *fi. fa.* to issue, and in obedience to that order, the clerk issued it. It had not been quashed at the time of the sale, and the sheriff treated it as a claim upon the fund. Thus, it served the purpose, so far as the sheriff was concerned, of a more formal notice. Being mentioned in the sheriff's return, and filed with it in the clerk's office, the court had information of it when the fund was placed in the hands of a receiver. Owing to the bankruptcy of the debtor, and ultimately of the receiver also, together, probably with other causes, the fund remained under the control of the court for a great length of time. Before any disposition was made of it, the company came forward and claimed it, first having endeavored unsuccessfully, to uphold the *fi. fa.*, as a *fi. fa.*, with a view to taking the fund upon it. There seems to be little or no violence in treating the *fi. fa.*, thus followed up, as equivalent to a more regular notice. Perhaps if the sheriff had not respected it, or if the company had not made any further claim after it was quashed as a *fi. fa.*, effect ought to be denied to it as notice. In the former event, the sheriff might not have been liable for paying away the money in disregard of the lien, and in the latter, the company might not have been liable for damages to the plaintiff or defendant in the process under which the property was sold. But the case we have now is one in which the *fi. fa.* was placed by the company in the hands of the sheriff, and the sheriff respected it, and the company came forward and claimed

the fund when the time for distribution arrived.  Under these facts, if the question of the company's liability for the statutory damages should arise, we do not think the company would be heard to say that it gave no notice to the sheriff to hold the money.  We found our ruling on what we think to be the reason and good sense of the matter, rather than upon authority.  No authority in point has been cited, and we know of none that affords anything more than some slight analogy.  In 8 *Ga.*, 65, it was held that an unconstitutional act of the legislature, although void as a law, might operate as notice.  In 9 *Ga.*, 446, an effort was made to affect a person with notice by proving a void action to which he was a party.  The point was not ruled, further than to hold that an exemplification from the record was inadmissible.  But the court added, "We will not say that the original papers might not have been produced, not as pleadings in the cause, but as writings merely, and service of them proven by the officer, as an individual, for the purpose of charging Burke with notice of this adverse claim."  On the other hand, in 14 *Ga.*, 166, and 18 *Ib.*, 247, defective notices were pronounced unavailing as the initiatives of statutory proceedings.

3.  Though, under the special circumstances of this case, the machinist's lien can have effect upon the proceeds of the property without having been established by a prior judgment, yet, in asserting the same against such proceeds, all the facts necessary to the existence of the lien must be proved. The lien can be recognized for only so much of the amount claimed as appears, affirmatively, to be secured—that is, to be covered by a lien duly recorded and still subsisting.  The recording, to be valid, must have been done within three months from the time the furnishing, putting up or repairing was completed.  Irwin's Code, §1963.  In a single act of furnishing, putting up, or repairing, the time of completion would be easy to determine; but if several things are furnished or put up at different times, or if repairs are made at different times, when is it that completion, in the

sense of the statute, takes place? It would seem that this depends upon whether all was done under one contract, express or implied, or a part under one contract and the balance under another. Completion can be predicated whenever the machinist can say, "my contract in its final shape, including all the modifications which it has undergone in the progress of its execution, is now fully performed." Within three months from that time, he can, and must, record his claim of lien. If the parties contemplate a running account, and deal accordingly, there is a knitting together of the successive items, and the date of the last will govern the whole. In the present case, there was an account for $1,020.26, beginning November 4th, 1871, and closing April 4th, 1872. The claim of lien was recorded on the 5th of the same April. The property to which the claim applied was a steam engine and boiler, the shafting, pulleys and other attachments thereto, the cotton seed hullers and hydraulic presses, upon the same premises, and the premises themselves. The lien was claimed for furnishing the steam engine, shafting, pulleys, attachments and cotton seed hullers, and for repairing the cotton seed hullers and hydraulic presses. In the account, there is no charge for the steam engine. According to the evidence, the steam engine was sold for the specific price of $1,350.00, and was delivered and put up about the last of December, 1871, or the first of January, 1872. The price was covered by two drafts, one for $500.00, which was paid; the other for $850.00, which was accepted, but not paid. The latter (by copy) is in the record, and bears date January 1st, 1872, and is due at four months. It is drawn by the superintendent of the debtor company, upon the president thereof, and by the president accepted. It is payable to the order of John King, banker, and by him indorsed to H. A. Ford, cashier. The legal title is thus shown to be in Ford. By what means the possession of the paper was acquired for use at the trial does not appear; neither does it appear that the real ownership of the draft was in the machinist at the time of recording

the claim of lien, or has been at any subsequent time. Yet the machinist sets up, in the present controversy, the amount of the draft as embraced in the lien, in addition to the amount of the account, and the finding of the jury was for $1,692.00, with interest from the 4th of May, 1872. Besides that the draft appears to be the property of another, there is this further obstacle to the rightful allowance of it, or any part of it, as secured by the lien : the claim of lien was recorded on the 5th of April, 1872—more than three months after the date of the draft. There is no evidence going to show that the delivery or the putting up of the engine was later than the time the draft bears date, but the evidence is that the delivery and putting up took place about the last of December, 1871, or first of January, 1872. The sale of the engine was for a specific price, and seems not to have been connected with the general account. It was settled for separately by the delivery of the two drafts.

4. Moreover, the original furnishing and putting up of an engine in a manufacturing establishment belongs to construction, and is, presumptively, a matter of contract distinct from subsequent repairs. When construction is finished, unless there is a prior engagement to make repairs, or keep in repair, the contract is performed, and that completion which the statute contemplates is accomplished. Therefore, even if the price of the engine had been entered in the same account with repairs done thereon, the dates of the latter would not have afforded, *prima facie*, a point for computing the time for recording a lien in respect to the former. In the account before us, there is a charge, dated December 23d, 1871, for setting up engine. This would seem to belong to construction. Other items of the account, such as shafting, etc., belong, apparently, to the same class, while some are obviously for repairs. When construction as to some of the machinery, and repairs as to the rest, in the same establishment, proceed simultaneously, and both are entered in the same running account, in the absence of express contract for the one as distinct from the other, there would

seem to be no reason why the last item of the account should not govern as to the whole. But the two classes of items, even in the same account, should be referred, presumptively, to different contracts, where construction is first in the order of time, and the repairs are all subsequent. It is to be observed, that while the account before us contains charges for repairs other than those done upon cotton seed hullers and hydraulic presses, only the repairs done upon these articles are mentioned in the claim of lien as recorded. The account should be more thoroughly sifted than can be done by any evidence which we find in the record.

5. The testimony discloses that some of the items of the account arose thus: broken machinery was brought to the machinist, and mended, and articles ordered, from time to time, were sold by the machinist, if on hand, and if not on hand, were manufactured. These things probably (we say, probably, for the evidence is less certain than it should be,) embraced such work as splicing shafts, splicing bolts, straightening plunger, straightening piston, repairing gear-wheels, repairing wrenches, welding pump rod, etc.; and such articles as bolts, nuts, screws, plugs, collars, washers, couplings, etc. Work thus done by the machinist at his own shop on detached parts brought to him to be mended, and articles sold or manfactured to replace parts broken or worn out, would not come within the terms of a statute which gives a lien both upon the machinery furnished or repaired, and upon the premises—the real estate. If the machinist detached the parts for the purpose of mending them, and after mending, restored them to their situation in the machinery on the premises, or, perhaps, if he mended and restored without having been concerned in detaching, his work altogether would amount to repairing the machinery, and not merely to mending pieces thereof. So, if the machinist not only sold or manufactured bolts or other pieces to supply the place of those broken or worn out, but made them a part of the machinery itself by putting them in place, the whole, taken together, would constitute repairing. But for mere

work done at the shop, whether by way of manufacture or repairs, a lien of another kind is given by section 1967 of Irwin's Code, as follows : " All mechanics shall have a lien on all personal property manufactured or repaired by them, to the extent of the work done and the materials furnished ; but such lien shall cease on the delivery of possession to the owner." It may be that work at the shop, and the sale or manufacture of articles needed to keep up machinery would be treated as repairs to the machinery itself *in situ*, if done in pursuance of a contract to keep in repair for a given period. The evidence calls for no expression of opinion upon this question.

6, 7, 8. At the proper time, a motion was made in the supreme court to dismiss the writ of error, on several grounds. In overruling the motion, the court held as set out in the 6th, 7th and 8th notes at the head of this opinion.

9. We think the superior court erred in overruling the motion for new trial, but it is needless to discuss the motion in detail. What has been said will sufficiently indicate the views of this court on all material points of the controversy. The second ground of the motion complains that the court refused to charge so and so, but fails to state that any request was made. That there was something in the nature of a request is implied in the refusal ; but how the request was made, or when, or by whom, is *dehors* the implication. We cannot assume that it was made in proper time and manner, when there is no express statement that it was made at all, and when the presiding judge has adhered to his reason for refusing it, whatever that might be, by declining to grant a new trial.

Cited for plaintiffs in error, (failure to sue) 3 Bank. Reg., 658 ; 8 *Ib.*, 123 ; 14 *Ib.*, 542 ; 49 *Ga.*, 506 ; 56 *Ib.*, 150 ; Irwin's Code, §1962 ; (strict construction) 30 *Ga.*, 527 ; (lien on land—surrender or exhaustion) Bump Bank., 85, 86, 432. Cited for defendant in error, (practice) 56 *Ga.*, 153 ; 55 *Ib.*, 58, 649 ; (suit unnecessary or excused) Irwin's Code, § 1961 ; 32 *Ga.*, 192 ; 51 *Ib.*, 163, 164 ; 26 *Ib.*, 426 ; 3 *Kelly*, 532 ;

(attachment not appropriate) 51 *Ga.*, 616; 45 *Ib.*, 74; 40 *Ib.*, 180; Irwin's Code, § 1959; (extent of lien) 33 Mo., 32, 272; 2 Ohio State, 114; 4 G. Greene, 115; 2 Disney, 544; 68 Pa. State, 208; 33 Wis., 267; 51 *Ga.*, 561.

Judgment reversed.